## J. D. GLISSON et al. v. VIRGIL STONE.

Western Section. June 4, 1926.

Petition for Certiorari denied by Supreme Court January 15, 1927.

1. **Brokers. Banker writing insurance for insurance agent held to be a broker.**

    Where a banker of a small town bank wrote insurance for various insurance agents and sent them the applications for the insurance, and the policies which were signed by the agents and not by the banker, held that the banker was an insurance broker.

2. **Insurance. Party assuming to make application for plaintiff's insurance held liable for failure to include a building.**

    In an action to recover the value of a barn because of defendant's failure to include the same in an insurance policy where the evidence showed that the defendant was a banker who sometimes wrote insurance, and the plaintiff listed his property with him for insurance, and signed the application which the banker later filled out, leaving out one of the barns, held the banker was liable for the amount of insurance that would have been issued on the building.

3. **Negligence. Insurance. Farmer who relies on insurance agent to properly insert the description of his property, held not negligent.**

    In an action to recover for failure to insure plaintiff's barn where the defense was that the plaintiff was negligent in not reading over his application, held that since the plaintiff relied on defendant to make out his papers for him and the defendant was familiar with the forms, which plaintiff was not, there was no negligence on the part of plaintiff in not reading over the paper.

Appeal from Chancery Court, Weakley County; Hon. V. H. Holmes, Chancellor.

Reversed.

Maiden, Rowlett & Maiden, of Dresden, for appellant.

C. N. & H. H. Lannom, of Union City, for appellee.

HEISKELL, J. This is a suit by J. D. Glisson and Sallie Glisson to recover of the defendant, Virgil Stone, $250 which amount the complainants insist is due them by reason of the defendants having failed to comply with his contract to procure insurance against loss by fire on a certain barn belonging to complainants.

The defendant was the assistant cashier of a bank at Dukedom, Tennessee, and his principal business was banking, but in addition he was a licensed insurance solicitor and was accustomed to solicit and obtain insurance for Fall & Colley, who were insurance agents at Fulton, Kentucky. The defendant undertook to obtain fire insurance on three barns belonging to complainants and for this purpose undertook to fill out an application for complainants, but by inadvertence omitted one barn, which was destroyed by fire before com-

plainants received the policy which was issued covering the other two barns. Complainants offered to pay defendant the premium at the time defendant filled out the application, but defendant said it would be time enough to pay the premium when the policy was received.

The Chancellor held that complainants were not entitled to any relief and dismissed the bill. The Chancellor's findings of facts are as follows:

"Complainants own the land described and mentioned in the bill, on which is located the tobacco barn mentioned in the first paragraph of the bill.

The defendant, Virgil Stone,.lives at Dukedom, Tennessee, and is engaged primarily in the banking business, and also is engaged in soliciting insurance.

The defendant' has no direct or contractual connection with the Continental Insurance Company. The agents in this territory for that company are Mr. Fall and Mr. Colley, who live and have their office at Fulton, Kentucky.

Prior to and at the time set out in the bill he was soliciting insurance as an agent or employee of Fall and Colley and whatever compensation he received for his services was paid to him by them.

On the — day of September, 1923, defendant undertook to fill out an application for insurance on some tobacco barns owned by complainants, including the barn particularly mentioned in the bill, but by mistake or inadvertence defendant failed to include in the application this particular barn.

The application was accepted and the policy was issued, covering.the other barns.

The complainants relied on defendant's agreement to file the application and believed that the particular barn was covered by the policy.

The barn was destroyed by fire and there is no proof that complainants paid or agreed to pay to defendant any compensation for his undertaking to fill out and file the insurance application.

The value of the barn was in excess of the amount of insurance sought thereon, which was two hundred and fifty dollars."

Complainants have appealed and assigned errors as follows:

## I.

"The court erred in dismissing complainants' bill and taxing them with the cost in this cause, and in not granting the relief sought.

## II.

"The court erred in not finding that the defendant was liable to complainants in the sum of two hundred and fifty ($250) dollars, which was the amount of insurance the defendant was to procure for complainants on the barn destroyed by fire.

## III.

"The court erred in making the following a part of his finding of fact in this cause, to-wit:

" 'The barn was destroyed by fire and there is no proof that complainants paid or agreed to pay to defendant any compensation for his undertaking to fill out and file the insurance application.' "

There is little dispute about the facts. The defense is that defendant was not a broker, and that an agent is not liable to third parties for a nonfeasance, but only for a misfeasance. Defendant cites Drake v. Hogan, 24 Pickle, 269, where an agent in charge of real estate was sued personally by the tenant for damages resulting from a failure to repair, and it was held that this was a mere nonfeasance, for which the agent was responsible, if at all, only to his principal and not to a third party. As applied to a case of that sort there is no question but that this is well-settled law. Defendant cites no Tennessee case any stronger than the 24 Pickle case. No case is referred to in which the facts are like the present case.

On the other hand complainants cite authorities which seem to support the contentions.

1. That one who contracts to take out insurance for a party is liable for a failure to do so on the theory that pro tanto he has become the broker or agent of the insured, and this even though he may be at the same time, for some purposes, the agent for the insurance company.

2. That conceding that the defendant Stone was not a broker, that he is liable on the principle that one who promises to do something for another, even gratuitously, and who would not be responsible for a failure or refusal because this would be a mere nonfeasance, yet is liable if he undertakes to do what he promised and does it in such improper manner as to cause damage to his promisee for this is not a nonfeasance, but a misfeasance.

For defendant it is conceded that if Stone had been an insurance broker and been paid as such that he would be personally liable, but as he was not paid by the complainants it is contended, he would not be liable to them even if a broker, and that under no theory but that of a brokerage could he be liable at all.

First, can the defendant be considered in this transaction with complainant acting as a broker. We take it that here, as elsewhere, the law cares little about names. The question is, what was the relation of the parties.

J. D. Glisson says it was late in the day when he saw Stone, and that he (Stone) did not have the application filled out, and that Stone asked him to sign it that day and said it would be all right, that he relied on Stone, and Stone undertook to get the insurance on the three barns. That Stone then told him the barns were covered by insurance from that time.

Young says Stone told him before the barn burned and before the policy was seen, that the barn was insured. Stone says he thought he put the other barn in the application. He is asked,

"Q. 18. Now this application wasn't read either by you or Mr. Glisson? A. I don't suppose he read it in full. I handed it to him. I don't think he did.

"Q. 19. As a matter of fact, Virgil, wasn't it filled out after he signed it? No, sir, I thought it was already in there."

We think Glisson is right about it, on account of the lateness of the hour he signed the application and left it for Stone to fill up.

"An insurance broker is one who acts as a middleman between the assured and the insurer, and who solicits insurance from the public under no employment from any special company, but having secured an order he either places the insurance with a company selected by the assured, or in the absence of any selection by him, then with a company selected by such broker. A broker is the agent for the insured, according to all authorities on the subject, though at the same time for some purpose he may be the agent for the insurer, and his acts and representations within the scope of his authority as such agent are binding on the insured." R. C. L., 868.

"Every broker is within a sense an agent, but every agent is not a broker. The chief feature which distinguishes a broker from other classes of agents is that he is an intermediary, or middleman, and, in accepting applications for insurance, acts in a certain sense as the agent of both parties to the transaction. Another distinction is that the idea of exclusiveness enters into an employment of agency, while in respect to a broker there is a holding out of oneself, generally for employment in securing insurance." Gay v. Lavina State Bank, 18 A. L. R., 1208.

"An agent who takes his principal's money under an express agreement to procure insurance, and unjustifiably fails to secure the same, or make an effort in that direction, thereby assumes the risk and becomes liable, in case of loss, to pay as much or the same as would have been covered by the insurance policy

for which his principal had paid, provided the same had been procured as directed." Gay v. Lavina State Bank, supra.

". . . . and, as between the insured and his own agent or broker, authorized by him to procure insurance, there is the usual obligation on the part of the latter to carry out the instructions given him and faithfully discharge the trust reposed in him, and he may become liable in damages for breach of duty. If he is instructed to procure specific insurance, and fails to do so, he is liable to his principal for the damage suffered by reason of the want of such insurance. The liability of the agent with respect to the loss is that which would have fallen upon the company had the insurance been effected as contemplated. Negligence on the part of the agent, defeating in whole or in part the insurance which he is directed to secure, will render him liable to his principal for the resulting loss." Gay v. Lavina State Bank, supra. See, also, Cyc., pages 1448-1449, in which the same principle is set forth.

In this case of Gay v. Lavina State Bank, the court further says:

"The only case which has been called to our attention, presenting facts almost identical with the case before us, is that of Mayhew v. Glazier, 68 Colo., 350, 189 Pac., 843, wherein Mr. Justice Allen, for the court, used language, from which we quote with approval as particularly applicable to the case before us, as follows:

" 'It may be assumed that the plaintiff understood that Mayhew was an agent for an insurance company, but that fact tends to prove, rather than to disprove, the existence of an agreement, such as that alleged in the complainant, between the plaintiff and the defendant Mayhew in his individual capacity. If the plaintiff believed that Mayhew was an insurance agent, he would naturally believe that such agent could cause a policy to be issued, and, if desiring insurance, might give to such agent an application for insurance. Such was the situation between the plaintiff and the defendant Mayhew. The plaintiff desired hail insurance, effective at the earliest possible moment. He gave the defendant his promissory note, payable to the defendant himself, as payment for the premium, with the understanding that the defendant would cause a policy to be issued without any delay . . . The contract sued upon, alleged to have been made between the plaintiff and the defendant Mayhew did not conflict with any duty Mayhew owed to the insurance company. Mayhew was the agent of the insurance company for the purpose of soliciting applications for hail insurance, but had no authority to issue policies . . . The contract made between the plaintiff and the defendant Mayhew was not against

the interests of the insurance company. It did not call for the issuance of a policy different from the policies usually issued. It did not deprive the company of any premiums due it. Mayhew took the note of plaintiff to himself . . . Whatever duty he owed to the company, it did not preclude him from acting as the agent for the insured in the matter of causing a policy to be issued, and in the matter of immediately forwarding plaintiff's application for insurance to the company, or to some agent authorized to receive and approve such application. This case falls within the rule, stated in 22 Cyc., 1445, that 'the same person may act for different purposes as agent of the different parties to the contract, so that for one purpose he may be the agent of the insured, although as to procuring of the insurance he also represents the company.' As above indicated, we find that the alleged contract, upon which the plaintiff brought this action, was one made by the defendant Mayhew in his individual capacity, and not as an agent of the insurance company and that such contract is valid.' "

In Elam v. Smithdeal Realty & Ins. Co., 109 S. E., 632, 18 A. L. R., 1210, a North Carolina case in which the broker seems to have been an insurance agent also, the court said:

"It is further insisted for defendant that no cause of action is disclosed, because there is no consideration given for defendant's promise, but the better-considered decisions on the subject are to the effect that, while the agent or broker in question was not obligated to assume the duty of procuring the policy, when he did so, the law imposed upon him the duty of performance in the exercise of ordinary care, and as a matter of contract it is said in some of the cases on the subject that the trust and confidence reposed in him as agent afforded a sufficient consideration for the undertaking and carrying out the instructions given. Criswell v. Riley, 5 Ind. App., 496, 30 N. E., 1101, 32 N. E., 814. And in Evan L. Reed Mfg. Co. v. Wurts, 187 Ill. App., 386, Presiding Justice Baume, delivering the opinion, quotes with approval from 1 Joyce on Insurance, section 687, as follows: 'If a person voluntarily, without consideration, and without expection of remuneration or reward, agrees to procure an insurance, and actually takes steps in the matter, he is responsible for misfeasance, and if he proceeds to effect a policy, and is so negligent and unskilled that no benefit is derived therefrom, he is liable, although he was not bound to undertake the performance."

And it would seem that the promise to take the policy would suffice as a consideration."

Under these authorities we think the defendant must be considered as occupying the relation of broker or agent to the complainants.

There seems to be no objection to an agent for the insurance company acting as broker or agent for the insured in procuring the policy, there being no conflict of interest. But the Chancellor found "The defendant has no direct nor contractual connection with the Continental Insurance Company." So even this objection cannot be made. If he acted as broker or agent for the insured then he is responsible for nonfeasance and this without payment of anything by the insured other than the premium on the policy.

But if the defendant cannot be considered as a broker he is still liable to complainants because he was guilty not merely of nonfeasance, but of misfeasance. Elam v. Smithdeal Realty & Ins. Co. (N. C.), 18 A. L. R., 1212, supra.

A distinction exists between nonfeasance and misfeasance; the one being a total omission to do an act which one gratuitously promises to do, and the other a culpable negligence in the execution of the act. If a party makes a gratuitous engagement, and actually enters upon the execution of the business, and does it amiss through the want of due care, by which danger ensues to the other party, an action will lie for misfeasance. Words and Phrases, citing Gregor v. Cody, 19 Alt., 108; 82 Me., 131, 17 Am. St. Rep., 466.

That was a case of a promise by a landlord to repair, when he was under no obligation to do so. The court said for a refusal or failure he would not have been liable, but for repairing in an improper manner he was liable. The court said:

"But while it is generally true with respect to gratuitous contracts that for nonfeasance no action lies, still for misfeasance an action on the case may be maintained inasmuch as 'the confidence induced by undertaking any service for another is a sufficient legal consideration to create a duty in the performance of it.' Smith's note in Coggs v. Bernard Smith Lead Co. (6th Am. Ed.), 355. "A distinction exists between nonfeasance and misfeasance,—between a total omission to do an act which one gratuitously promises to. do and a culpable negligence in the execution of it. . . . If a party makes a gratuitous engagement and actually enters upon the execution of the business and does it amiss through the want of the due care by which damage ensues to the other party, an action will lie for this misfeasance. 2 Kent Com., 570; Thorne v. Dens, 4 Johns, 96, 99 Ralfe v. West, 13 C. B., 466 (76 E. C. L.); Elsee v. Gateward, 5 T. R., 143, 149, 150; Wilson v. Brett, 11 M. & W., 113, 115; 16 Am. Jur., 261 et seq."

The Maine court refers to the case of Gill v. Middleton, 105 Mass., 477, as being on all fours with the case of Gregor v. Cody.

Counsel for defendant, in a supplemental brief, cite and rely upon Ramspeck v. Patillo, 42 L. R. A., 198, from the Supreme Court of

Georgia. This case holds a contract invalid by which the agent evidently having authority to issue policies undertook to keep the property of plaintiff insured in companies represented by him.

The case is distinguishable from the present case in two respects. 1. The agent was a regularly accredited agent of the insurance company, with power to issue policies. 2. It was a case of nonfeasance. It is in principle further distinguished by many cases which are like the present case.

In Michigan Pipe Co. v. Ins. Co., 20 L. R. A., 278, we find this: "The rule is laid down by May on Fire Ins., section 125, that the law will not allow a person to act as agent for both the insurer and insured and if he does so act either party may avoid the contract;" but the author adds that, "it may happen that during negotiations the agent of the insurers, in certain particulars, may in other certain particulars be empowered by the insured to act for him, so that the same person becomes now the agent of the one and now the agent for the other contracting party." There are numerous cases bearing out this idea. Some holding that it is a question for the jury whether in a certain particular the agent acted for the insurer or the insured. This distinction is clearly brought out in the cases of Gay v. Lavina State Bank, 18 A. L. R., 1204, and Elam v. Smithdeal Realty & Ins. Co., 18 A. L. R., 1210, and the annotations following.

The case of Ramspeck v. Patillo, was pressed upon the court in Mayhew v. Glazier, 68 Colorado, 350, a case much like the present case, and being the case referred to in Gay v. Lavina State Bank, supra, as most like that case. The court says:

"The plaintiff in error further contends that if plaintiff's contract was with Mayhew personally, and not as agent for the insurance company, the contract was void as against public policy and non-enforceable. In support of this contention, counsel cite Ramspeck v. Patillo, 104 Ga., 772, 30 S. E., 962, 42 L. R. A., 197, which lays down the rule that an agent cannot make a valid contract, where in the same transaction, he acts as agent for both the insurer and the insured. This rule is not applicable in the instant case; the contract sued on, alleged to have been made between the plaintiff and the defendant Mayhew, did not conflict with any duty Mayhew owed to the insurance company. Mayhew was the agent of the insurance company for the purpose of soliciting applications for hail insurance, but had no authority to issue policies. The insurance company gave Mayhew certain instructions as to amount of insurance and the rates of premiums and authorized him to take notes for the premiums. It permitted him to take a note running to himself and himself to remit to the company the cost of the premium. The contract made between the plaintiff and the defendant Mayhew was not against the interest of the insurance company. It did not call for the is-

suance of a policy different from the policies usually issued. It did not deprive the company of any premium due it. . . . Whatever duty he owed to the company, it did not preclude him from acting as the agent for the insured in the matter of causing a policy to be issued, and in the matter of immediately forwarding plaintiff's application for insurance to the company, or to some agent authorized to receive and approve such application. This case falls within the rule stated in 22 Cyc. 1445, that 'the same person may act for different purposes as agent of the different parties to the contract, so that for one purpose he may be the agent of the insured, although as to the procuring of the insurance he also represents the company.''

"As above indicated, we find that the alleged contract upon which the plaintiff brought this action, was one made by the defendant Mayhew in his individual capacity and not as agent of the insurance company and that such contract is valid." Mayhew v. Glazier, 68 Colo., 354, 355.

The instant case is even stronger in the facts which distinguish it from the Ramspeck case, than the Colorado case. Stone was not the agent of the insurance company. He says so himself, and the Chancellor so finds. We think these cases clearly distinguish the present case from the 104 Ga. case.

In the last place, defendant insists that the complainant was also negligent, and for that reason cannot recover. Under the circumstances of this transaction we do not think this doctrine applies. If he had received the policy and failed to read it, as between complainant and the insurance company, the rule could no doubt be invoked, but considering that the defendant was acting for complainant; that complainant relied on the defendant who had much more knowledge as to the matter in hand than complainants, the hurry and lack of opportunity for examination when it was signed and the difficulty of an amateur understanding such a paper suddenly, not to mention the fact that it was not filled up until afterwards, when Stone could take all the time he wanted, but Glisson did not see the application again, we think the court cannot be required to hold complainants estopped and deny them relief on this ground.

Our conclusion is that the assignments of error must be sustained, the case reversed, and a decree entered in favor of complainants against the defendant for the sum of $250 with interest from the filing of the bill and all costs of the cause.

Owen and Senter, JJ., concur.