Howard J. COKE, Plaintiff-Appellant,

v.

UNITED TRANSPORTATION UNION, Defendant-Appellee.

Court of Appeals of Tennessee, Middle Section.

Jan. 22, 1982.

Denied Permission to Appeal by Supreme Court April 5, 1982.

Malcolm L. McCune, Nashville, for plaintiff-appellant.

Barrett, Kniffen & Blackburn by George Barrett, Nashville, Norton Newborn, Cleveland, Ohio, for defendant-appellee.

## ABRIDGED OPINION

TODD, Presiding Judge.
(With concurrence of participating judges, the original opinion has been amended for publication)

In a former appeal, this Court reversed a summary judgment for the defendant and remanded for a trial on the merits. Upon remand, the Trial Judge entered judgment in favor of plaintiff for $13,002.42; and plaintiff appealed.

The two issues presented by appellant relate to the amount of the judgment.

The memorandum opinion of the Chancellor contains the following:

The plaintiff Howard Coke is seeking damages from the defendant United Transportation Union, claiming he was deprived of financial benefits of his union office.

## FINDINGS OF FACT

(1) On September 30, 1968, Coke was elected to the Board of Appeals of the Brotherhood of Railroad Trainmen to a four year term.

(2) The seven member BRT Board of Appeals worked part time and were paid a daily rate salary for each day in session plus one day to, and one day from the meetings.

. . . .

(4) The BRT Board heard grievances involving roadmen, busmen, and yardmen/switchmen.

(5) On January 1, 1969 the BRT merged with three other unions to form the United Transportation Union.

(6) The four merged unions adopted a Unification Agreement and Constitution that created three Boards of Appeals to hear and decide internal union disputes: the Board of Appeals, Yardmen/Switchmen; the Board of Appeals, Enginemen;

and the Board of Appeals, Conductors, Brakemen, and Others.

(7) The Unification Agreement provided that certain existing officers, including members of the BRT Board of Appeals, would serve as first officers of the UTU until December 31, 1971, when officers for the new union were elected.

(8) Coke was assigned to serve on the Yardmen/Switchmen Board pursuant to § 4, Line 186 of the Unification Agreement because he was a "yardmen" member of the BRT Board.

(9) Coke served on the Yardmen/Switchmen Board until December 31, 1971 when he ran for and was elected to a four year term on the same Board.

(10) Coke served continuously on the Yardmen/Switchmen Board until December 31, 1975 and was paid for each day of service plus one day travel to and from Cleveland.

(11) The Yardmen/Switchmen Board heard and decided grievances from both the old BRT and the other merged unions. Disputes that involved roadmen and busmen from the old BRT and the other merged unions were heard by the Conductors, Brakemen, and Others Board.

(12) After unification Coke was not hearing as many cases as he heard while a member of the BRT Board.

. . . .

## CONCLUSIONS OF LAW

(1) Plaintiff was a first officer under § 4(a) and entitled to the protection of § 6(c) of the Unification Agreement.

(2) The protection afforded plaintiff under the Unification Agreement was during his term as a "first officer" from January 1, 1969 to December 1, 1971.

. . . .

## PROTECTION AFFORDED BY § 6(c)

The Unification Agreement at § 6(a), Lines 24—33 reads:

None of the first officers, as identified in § 4(a) of this Unification Agreement, shall be deprived of employment or placed in a worse position with respect to salary, vacation, health and welfare benefits, or rights and privileges pertaining thereto as a result of the unification.

Construing the disputed language quoted above is the determinative issue in this case.

Plaintiff urges the Court to adopt a formula negotiated between various railroads and unions as the proper construction to be placed on the language. The formula would provide a guaranteed minimum compensation based upon a calculation of pay earned in prior years.

The defendant, on the other hand, argues that the disputed language protects only the service of a Board member and the daily rate of pay. Defendant interprets the protective language as guaranteeing plaintiff employment as a Board member and salary for each day of service at no less than his daily rate under the BRT.

The cardinal rule for interpretations of agreements is to ascertain the intention of the parties as expressed by the agreement. *Bob Pearsall vs. Regal Chrysler-Plymouth*, [Tenn.] 521 S.W.2d 578.

Following this rule the Court concludes that plaintiff's interpretation is too broad and defendant's is too narrow.

If the Court adopted the formula urged by plaintiff a showing of causal relation between the unification and any loss of salary would be eliminated. The agreement itself requires that the loss or deprivation be "as a result of the unification."

Turning now to the defendant's argument that the agreement is limited to protecting the daily rate of pay and membership on a Board. The language of the agreement is broader than that. It protects first officers from being "deprived of employment or placed in a worse position with respect to salary . . . or rights and privileges pertaining thereto . . . ."

The Court concludes that the parties intended that if plaintiff had a loss of salary resulting from the fact that as a

member of the new Board he heard fewer disputes, he was entitled to recover such loss.

## REFERENCE TO MASTER

This matter will be referred to the Master for a determination of:

(1) How many days would plaintiff have served on the BRT Appeals Board during the period from January 1, 1969 to December 31, 1971 if unification had not occurred?

(2) What was the daily rate of pay for Appeals Board members during the period of January 1, 1969 to December 31, 1971?

(3) How many days did plaintiff serve on the new Yardmen/Switchmen Board from January 1, 1969 to December 31, 1971?

In determining issue (1) the Master will not consider disputes involving a new member of a merged local who joined after January 1, 1969.

In determining issue (1) the Master will not consider disputes involving the Unification Agreement and Constitution of UTU.

The Special Master reported a loss of earnings of $13,002.42 for which amount and interest the Chancellor rendered judgment for the plaintiff.

■ Appellant first insists that the Chancellor should have followed the "historic interpretation" of the unification agreement which interpretation would guarantee to plaintiff a continuance of the same annual income enjoyed by him prior to the merger. The "historic interpretation" is described in appellant's brief as follows:

The historic interpretation provides for: (1) a test period—the next preceding twelve (12) months during which compensation was paid prior to the merger; (2) a minimum guarantee—the total compensation received by the employee during the test period divided by twelve; (3) an increase in the net guarantee to reflect general wage increases; (4) no necessity of showing a causal relationship between

the merger and the adversity; (5) no full-time—part-time employee distinction, (6) a specification of the events which would terminate the benefits due a protected individual under the language of the contract; and (7) a monthly payment to the protected individual of an amount of money equal to the minimum guarantee as adjusted to reflect wage increases minus the total amount of compensation earned from the "protecting entity" during a given month.

This Court agrees with the interpretation adopted by the Chancellor in his opinion quoted above, that is, that plaintiff-appellant was guaranteed that his opportunity of employment and earnings would not be impaired by the merger. Before the merger, plaintiff's employment and earnings depended upon the need for his services which, in turn, depended upon the number and nature of disputes within the jurisdiction of the board of which he was a member. The unification agreement assured him a continuation of this basis of employment and earnings.

If the merger had not occurred, the employment and earnings of plaintiff would have varied with the volume of appealed disputes. If the volume was less, his earnings would be less. Likewise, under the merger plaintiff's employment and earnings were subject to variation with the volume of appeals *in the same type of disputes as handled by him before the merger.* As indicated in the Chancellor's memorandum, quoted above, the change in appeals boards and reassignment of work load after the merger did reduce the case load, ergo the volume of work, ergo the earnings of plaintiff. With the minor exception of the exclusion of appeals involving new members, the decision of the Chancellor coincides with the view of this Court on the subject just discussed.

This Court conceives no basis for excluding the disputes of new members which would ordinarily have been decided by the plaintiff if no merger had occurred. However, no issue is made as to this part of the Chancellor's decision.

This Court respectfully disagrees with the insistence that interpretation of contracts between unions and their members are controlled by contract provisions or interpretations of contracts between unions and management. Contracts are the result of many-faceted negotiations and may contain peculiar provisions arising out of the "give and take" involved in the negotiations.

■ Appellant insists that the Chancellor erred in limiting plaintiff's recovery to the period from January 1, 1969, to December 1, 1971.

As above indicated, plaintiff was elected in September 30, 1968, for a term of four years. The merger occurred during his term of office on January 1, 1969. Thereafter, on December 31, 1971, plaintiff was elected for an additional term of four years, not on his former board which was abolished in the merger, but on the Yardmen/Switchmen Board to which he was assigned after the merger. This change of boards presents a slight difficulty in fixing plaintiff's rights, but there is no doubt as to the just results under the circumstances.

The Unification Agreement assured plaintiff of a continuation of his employment and earnings status. This means that his existing employment status would not be disturbed without an equivalent substitute. If the merger had not occurred, plaintiff would have been entitled to the benefits of his employment so long as the membership of the union saw fit to continue him in office. When his Board and office were destroyed by the merger, plaintiff was entitled to a substitute office of like opportunity. The new union saw fit to assign plaintiff to the Yardmen/Switchmen Board. This represented plaintiff's best substitute for re-election to membership on the old, abolished board.

Plaintiff's election to the Board designated by defendant as the successor to plaintiff's old board was tantamount to election to the old board and thereby extended the benefits of plaintiff under the unification agreement for the duration of his new term of office.

Plaintiff's action in becoming a candidate for election to the Yardmen/Switchmen Board was not an election or waiver of his rights to benefits which would have been permitted to continue to serve as a member of the old, abolished board.

Plaintiff is entitled to continued benefits guaranteed by the Unification Agreement for the duration of his new term office following his election on December 31, 1971.

Defendant-appellee relies upon testimony of a member of the negotiating team which devised the plan of merger. The negotiating team did not act on behalf of the membership except to propose an agreement for acceptance or rejection by the rank and file membership. The plain language of the agreement accepted by the membership must prevail over any ideas or opinions of the negotiating team not clearly imparted to the membership by the language of the instrument submitted to them.

The foregoing disposes of the contentions of the appellant. However, the defendant-appellee complains that the Chancellor erroneously allowed pre-judgment interest.

■ The trier of fact may, in his discretion, allow interest upon an unliquidated claim for property damages or breach of contract. *Johnson v. Tennessee Farmers Mut. Ins. Co.*, Tenn.1977, 556 S.W.2d 750.

■ Appellee insists that appellant forfeited his claim to pre-judgment interest by changing the form and content of his claim. This insistence overlooks the fact that this suit should have been unnecessary. The new consolidated union made specific promises to incumbent officers to induce them and their membership to abandon their old union and embrace the new. As to plaintiff, these plain and unequivocal promises were not kept. Plaintiff should have received just treatment without the necessity of suit. On the contrary, he has been delayed and forced to incur legal expenses which will effectively deprive him of complete justice. Pre-judgment interest on the previously awarded recovery and on the recovery to be awarded on remand is imminently just and proper.

The action of the Chancellor in awarding plaintiff judgment in the amount of $13,-002.42 and pre-judgment interest for the period preceding December 1, 1971, is affirmed.

The action of the Chancellor in denying any recovery for the period beginning December 1, 1971, is reversed; and the cause is remanded for the ascertainment and award to plaintiff of a judgment for the difference between the earnings he would have received from the former union on and after December 1, 1971, if the merger had not occurred and the earnings he actually received from the new union on and after December 1, 1971.

Costs of this appeal are taxed against the defendant-appellee.

Affirmed in part, reversed in part, remanded.

LEWIS and CONNER, JJ., concur.