**ARCON CORPORATION, etc., Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, et al., Defendants.**

**Civ. A. No. 3:83–0003.**

United States District Court,
M.D. Tennessee,
Nashville Division.

March 10, 1983.

On Motion for Summary Judgment
May 12, 1983.

On the Merits Dec. 15, 1983.

I.C. Waddey, Jr., Nashville, Tenn., for plaintiff.

C.J. Gideon, Jr., Byron R. Trauger, Doramus, Gideon & Trauger, Nashville, Tenn., for defendants.

NEESE, District Judge, Sitting by Designation.

This is an action predicated on diverse citizenship and the matter in controversy, 28 U.S.C. § 1332(a)(1), (c), in which the plaintiff seeks to recover from the defendants under several theories of recovery: including negligence, breach of contract, misrepresentation and fraud, estoppel, and breach of a policy of insurance. The defendants moved the Court " * * * to dismiss this action for failure [of the plaintiff] to join indispensable parties." Rule 12(b)(7), F.R.Civ.P. Such motion lacks merit.

The defendants argue that certain other entities should be party-defendants herein because it was the negligence of those nonparties that caused the loss for which the plaintiff seeks recovery. The plaintiff elected not to pursue whatever claims it might have against such alleged wrongdoers, having chosen instead to go against its insurers.

■ It is elementary that, where one or more persons may be liable to the plaintiff (whether jointly, severally or alternatively), the plaintiff may sue one or more of them without joining the others. *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 330, 75 S.Ct. 865, 869 [10], 99 L.Ed. 1122 (1955); *Lumbermen's Mut. Cas. Co. v. Elbert*, 348 U.S. 48, 52, 75 S.Ct. 151, 154 [6, 7], 99 L.Ed. 59 (1954); *McPherson v. Hoffman*, 275 F.2d 466, 470 [3] (6th Cir.1960); *Stiles v. Porter Paint Co.*, 75 F.R.D. 617, 618 [4] (D.C.Tenn.1976). The plaintiff had a right to determine for itself whom it would sue herein; after it chose, neither the Court nor the defendants can add another party defendant for it. *McPherson v. Hoffman, supra.*

■ The defendants appear to confuse Rule 19, F.R.Civ.P. with Rule 14(a), F.R.

Civ.P. *See* 3 Moore's Federal Practice (2d ed.) 14–29, ¶ 14.04 (Rule 19, allowing defendant to demand joinder of additional necessary or indispensible parties should be distinguished from the theory and procedure under Rule 14(a)). Assertion of a third-party claim under Rule 14(a) is the proper procedure " * * * if there is a dispute over which of several parties caused damage, and multiple litigation may arise with inconsistent results on the issue of causation. * * *" Federal Procedure, L.Ed. 118, § 59:135; *see Rogers v. Aetna Cas. and Sur. Co.*, 601 F.2d 840 (5th Cir. 1979). Such procedure is also the proper method of asserting a claim for subrogation. *Ib.*, at 169, § 59:213.

■ Obviously, the plaintiff's dispute herein is with its insurers, not with other parties against whom the defendants might have a right of subrogation. The Court sees no reason why this action cannot proceed in the absence of the non-joined entities.

■ If the defendants are concerned genuinely about not having these additional parties before the Court, they have at their disposal the impleader procedures of Rule 14(a),[1] *supra. See Brown v. Chaffee*, 612 F.2d 497, 503 (10th Cir.1979) and *Willis v. Semmes, Bowen & Semmes*, 441 F.Supp. 1235, 1246 (E.D.Va.1977). The motion hereby is

DENIED.[2]

## ON MOTION FOR SUMMARY JUDGMENT

This is a civil action in which the plaintiff seeks to recover from its insurers for property damage sustained as a result of flooding. 28 U.S.C. § 1332(a)(1),(c). The plaintiff asserts claims under a policy of insur-

---

1. A central purpose of Rule 14 is to avoid circuity of action and to dispose of the entire subject-matter arising from one set of facts in one action, thus administering complete and evenhanded justice expediously and economically.

*Lasa Per L'Industria Del Marmo Soc. Per Azioni v. Alexander*, 414 F.2d 143, 146[1, 2] (6th Cir. 1969).

2. The request of the plaintiff for oral argument is DENIED as unnecessary. Local Rule 8(b)(1).

ance issued by the defendants [1] as well as on the ground that the defendants failed to issue a policy providing coverage for the type of loss the plaintiff incurred.[2] The insurance companies, in turn, impleaded third parties, Rule 14(a), F.R.Civ.P., claiming those parties were responsible for the flooding and resulting damage to the plaintiff's property.

## I

The defendants moved for a summary judgment, Rule 56(b), F.R.Civ.P., " * * * as to all claims asserted by the plaintiff under the insurance contract in controversy * *," on the ground that the plaintiff did not commence this action within the time prescribed in the policy for so doing. The policy provided in clear, unambiguous language that

> [n]o suit shall be brought on the policy unless the insured * * * has commenced the suit within one year after the loss occurs.

■ In the absence of a statutory provision to the contrary, the validity of a provision in a policy of insurance requiring suit under the policy to be brought within a prescribed period of time " * * * cannot be disputed. * * *" *Thompson v. Phenix Ins. Co.*, 136 U.S. 287, 298, 10 S.Ct. 1019, 1023, 34 L.Ed. 408, 413 (1890); *accord Riddlesbarger v. Hartford Ins. Co.*, 74 U.S. (7 Wall.) 386, 392, 19 L.Ed. 257, 260 (1869) ("We have no doubt of its validity.") In Tennessee, such contractual periods of limitation have consistently been upheld and enforced. *Interstate Life & Accident Co. v. Hunt*, 171 Tenn. 119, 100 S.W.2d 987, 989[3] (1937); *Johnson v. Life & Casualty Ins. Co.*, 168 Tenn. 358, 79 S.W.2d 39, 40 (1935); *Guthrie v. Connecticut Indemnity*

*Ass'n.*, 101 Tenn. 643, 49 S.W. 829, 830 (1898); *Holland v. Fuller*, 14 F.Supp. 688, 692[4] (E.D.Tenn.1936).

■ In such situations, Tennessee's so-called savings' statute, T.C.A. § 28-1-105, " * * * is wholly inapplicable * * *." *Guthrie v. Connecticut Indemnity Ass'n.*, *supra*, 49 S.W. at 830. " * * * This must be true, for, if the contractual-limitation is valid, the parties are not bound by the general limitation of the statute; and for a reason they are not bound by the savings of the statute. This question is purely one of contract, and is not regulated by the terms of the statute. * * * " *Id.*

The complaint alleges that the loss sustained by the plaintiff occurred "on or about May 4, 1979." The plaintiff did not, however, commence this action until January 3, 1983, well outside the one-year period prescribed by the policy. The plaintiff's action "on the policy" is thus time-barred.

The motion of the defendants for a summary judgment, as to all claims asserted by the plaintiff on the insurance policy itself, hereby is GRANTED, Rule 56(c), F.R. Civ.P., and the plaintiff hereby is

DENIED all relief on the claims set forth in counts VI and VII of its complaint.

## II

The third-party claims asserted by the insurance companies are premised upon a finding in favor of the plaintiff, and against the former, " * * * under the insurance contract * * *." In such event, the third-party plaintiffs aver they would be " * * * subrogated to the rights of the [plaintiff] and entitled to be indemnified by the third-party defendants for all amounts

1. It is not entirely clear whether the policy was issued by one or both defendants; in any event, the plaintiff seeks recovery against both.

2. In its brief, the plaintiff argues that it is not seeking to recover under the policy issued but under a policy that was not issued. Exactly how one could recover under a nonexistent contract is not made to appear. In any event, the Court is satisfied that, according to the allegations of counts VI and VII of the complaint, the plaintiff is seeking to recover under the policy actually issued, although, in the former such count, the plaintiff seeks to incorporate additional terms into such policy, none of which would affect the one-year period of limitation contained therein; whether the defendants can be held liable for failing to issue to the plaintiff a policy covering the type of loss sustained is an entirely separate matter.

paid for the May 4, 1979 flood loss under the insurance contract to the [plaintiff]." [3]

■ The Court ruled, *supra*, that the claims of the plaintiff on the policy of insurance are barred by the one-year contractual period of limitations, and the plaintiff has been denied all relief on such claims. Obviously then, the insurance companies could not be found liable to the plaintiff " * * * under the insurance contract * *." Accordingly, the third-party claims—which are based on a recovery by the plaintiff against the insurance companies under the policy—have become moot and are without the jurisdiction of the Court. *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860[6] (11th Cir.1982).

It results, that the third-party claims herein hereby are

■ DISMISSED *sua sponte* for lack of the Court's jurisdiction of the subject matter.[4] Rule 12(h)(3), F.R.Civ.P.

The clerk will assign this action for a pre-trial conference on the remaining (separate) issues, *supra*, at a convenient time.

## MEMORANDUM OPINION, FINDINGS, CONCLUSIONS AND DECISION

### ON THE MERITS

This action by the plaintiff Arcon Corporation, *inter alia*, is to recover of the defendants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company damages allegedly due it by reason of such insurers' having failed to comply with their contract with the plaintiff to shift its loss from flooding of the contents in its business-house from the plaintiff to the defendants. Trial to the Court was on October 17–18, 1983.

---

**3.** ¶ 9 of the third-party complaint herein reads as follows:

"If the Arcon Corporation is permitted to recover under the insurance contract under the theory that its May 4, 1979, flood loss was proximately caused by the negligence of the third-party defendants and/or the third-party defendant's creation of a nuisance, then the third-party plaintiffs are subrogated to the rights of the Arcon Corporation and entitled to be indemnified by the third-party defend-

Upon the stipulated and other evidentiary facts and reasonable inferences flowing therefrom, the Court makes the following

Findings-of-Fact

(indicated by arabic-numerals)

and arrives at the following

Conclusions-of-Law

(indicated by capitalized-letters).

### I

### Jurisdiction

1. The plaintiff is a Tennessee corporation, not incorporated by Massachusetts, with its principal place of business within Tennessee, and the defendants are Massachusetts corporations, not incorporated by Tennessee, with their respective principal places of business within Massachusetts. The sum or value of the matter presently in controversy, exclusive of interest and costs, exceeds the sum of $10,000, and the defendants are before the Court by due process of law.

A. This Court has jurisdiction of the subject-matter hereof, 28 U.S.C. §§ 1332(a)(1), (c), and of all the parties.

B. The law of Tennessee, as applicable herein, is regarded as the rules of decision in this civil action. 28 U.S.C. § 1652; *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938).

### II

### Liability

2. In all transactions between the parties herein: the plaintiff acted by and through Mr. Charles Swift; the defendants acted by

---

ants for all amounts paid for the May 4, 1979 flood loss under the insurance contract to the Arcon Corporation."

**4.** Mootness is a jurisdictional question under the Constitution, Art. III, which may be raised by the Court on its own initiative. *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404[3], 30 L.Ed.2d 413 (1971); *International Union, Etc. v. Dana Corp.*, 697 F.2d 718, 720[2] (6th Cir. *en banc* 1983).

and through Messrs. Matthew Ashwood and William Eugene Webb, Jr.; and each of such respective agents acted respectively within the apparent scope of the authority which had been granted him by the respective principals.

■ C. Where employees of corporations act thus within the apparent scope of their authority to act for such corporations, then their actions are those of, and bind, such corporations. *Whitehaven Utility District of Shelby County v. Ramsey*, 215 Tenn. 435, 387 S.W.2d 351, 354[4] (1964).

3. The defendants acted gratuitously as volunteers and contracted to provide the plaintiff at the most economical premium-cost with the same insurance-coverages it was carrying at the pertinent time and to advise it, for further discussion, of any additional insurance-coverages it was deemed by the defendants to lack and need.

■ D. (1) When one person is requested by another person to make a promise, and the first such person complies by his or her words or actions with such request, and there is a valuable consideration for the making of such promise, a complete contract is thereby created between that promisor and that promisee. *Dark Tobacco Growers' Co-Op. Ass'n v. Mason*, 150 Tenn. 228, 263 S.W. 60, 67[5–7] (1924).

(2) " * * * [T]he duty of a volunteer, who undertakes to act, * * * 'even though gratuitously, may thereby become subject to the duty of acting carefully, if he [or she] acts at all' * * *." *Nidiffer v. Clinchfield R. Co.*, 600 S.W.2d 242, 246[9] (Tenn. App.1980), *permis. app. den.* by the Supreme Court of Tennessee (1980).

4. The defendants, as agreed and acting for the plaintiff, provided the plaintiff with the same insurance-coverages it was carrying at the pertinent time at a premium-cost approximately 20% less than the amount it had been paying therefor, but they breached such agreement by failing to advise it, for further discussion, of any additional insurance-coverage(s) they deemed the plaintiff needed and lacked and failed carelessly to discover the plaintiff's need for flood-insurance, which it then lacked.

E. " * * * [O]ne who contracts to [provide] insurance for a party is liable for a failure to do so on the theory that pro tanto he [or she] has become the broker or agent of the insured, and this even though he [or she] may be at the same time, for some purposes, the agent of * * * insurance compan[ies]. * * * " *Glisson v. Stone*, 4 Tenn.App. 71, 73 (Tenn.App.1926), *cert. den.* by the Supreme Court of Tennessee (1927); *see* also *Nidiffer v. Clinchfield R. Co., supra.*

5. (a) The plaintiff made no application to the defendants for insurance; the defendants furnished the plaintiff a written proposal-to-insure it against "ALL RISKS [as in orig.]" with 100% coinsurance for a stated premium-cost.

(b) The plaintiff accepted such proposal.

(c) As requested by the plaintiff, the Court notices judicially, Rule 201(b), F.R. Evid., that on January 4, 1979 within the Middle District of Tennessee, the words, all-risks, meant naturally and popularly each and every risk from each and every peril. Mr. Swift attributed to those words, *supra*, such natural and popular meaning; whereas, Mr. Ashwood attributed to them an esoteric significance intelligible to persons engaged in the selling or the buying extensively of insurance-coverage(s).

(d) Mr. Ashwood delivered to the plaintiff in April, 1979 the defendants' policy of "all-risks" insurance no. KF2–551d070253–049/8 on the contents of its business-house which said policy excepted specifically from coverage the plaintiff's risk from and peril of flooding.

■ F. (1) The contract-to-insure of the parties must be enforced according to the ordinary meaning of the words, all-risks, which would have been derived therefrom by reasonable persons dealing in the same situation as were Messrs. Swift and Ashwood. *Hardwick v. American Can Co.*, 113 Tenn. 657, 88 S.W. 797, 801 (1905).

(2) " * * * Under Tennessee law, the terms used in a contract are to be given

their natural, popular meaning unless from the context it appears that the parties intended otherwise. * * * " *Rolane Sportswear, Inc. v. United States Fidelity & G. Co.*, 407 F.2d 1091, 1097[12] (6th Cir.1969).

(3) (a) That Mr. Ashwood, acting for the defendants, may have conceived unilaterally a peculiar meaning of "ALL-RISKS", unshared by Mr. Swift, " * * * does not avail to disturb the plain and ordinary meaning of the words of the contract * * * " of these parties. *Moore v. Moore*, 603 S.W.2d 736, 739[6] (Tenn.App.1980), *permis. app. den.* by the Supreme Court of Tennessee (1980).

(b) " * * * [I]nsurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion. * * * " *Gaunt v. John Hancock Mut. Life Ins. Co.*, 160 F.2d 599, 602[5] (2d Cir.1947), *cert. den.* 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858 (1947).

6. The defendants were granted a summary judgment, Rule 56(b), F.R.Civ.P., on the (untimely) claims of the plaintiff under the aforenumbered insurance-policy. *See* memoranda opinions, orders and directions herein of May 12, 1983.

G. (1) An insurance policy which insures against "all-risks" protects the insured against loss of or damage to the latter's property *except* as to the perils and risks excepted specifically from coverage in the contract itself. *Clay v. Sun Insurance Office Limited*, 363 U.S. 207, 214 (dissenting opinion), 80 S.Ct. 1222, 1227 (dissenting opinion), 4 L.Ed.2d 1170 (1960). " * * * The primary elements of an insurance contract are the spreading and underwriting of a policyholder's risks. 'It is characteristic of insurance that a number of risks are accepted, some of which involve losses, and that such losses are spread over all the risks so as to enable the insurer[s] to accept each risk at a slight fraction of the possibility of liability upon it.' * * * " *Group Life & Health Ins. v. Royal Drug Co.*, 440 U.S. 205, 211, 99 S.Ct. 1067, 1073[4], 59 L.Ed.2d 261 (1979). " * * * The

extent of the risk is the basis of all tabulated premium charges. * * * " *American Automobile Ins. Co. v. Jones*, 163 Tenn. 605, 45 S.W.2d 52, 53 (1932), quoted-from in *Schultz v. Tennessee Farmers Mutual Insurance Co.*, 218 Tenn. 465, 404 S.W.2d 480, 484[4] (1966).

(2) " * * * The insurer has a right to assume that the risks [it] assumes shall not be enlarged. * * * " *American Automobile Ins. Co. v. Jones, supra*, 45 S.W.2d at 53.

7. Mr. Ashwood and his employers were on notice that " * * * floods are not the kind of risks which insurance companies undertake because they are usually catastrophic and affect many people. * * * " *Safeco Ins. Co. of America v. Guyton*, 471 F.Supp. 1126, 1130[2] (D.C.Cal.1979), *rev'd. on other grds.*, 692 F.Supp 551 (9th Cir.1982).

H. (1) Insurance companies contend " * * * 'the reason for the insertion of the exclusionary clause * * * in all risk insurance policies is to relieve the insurer from occasional major disasters which are almost impossible to predict and wreak damage to everyone in a large area rather than one individual policyholder. When such happens, the very basis upon which insurance companies operate is said to be destroyed. When damage is so widespread no longer can insurance companies spread the risk and offset a few of the average percentage of losses by many premiums.' * * * " *Id.*, quoting-from *Wyatt v. Northwestern Mutual Ins. Co.*, 304 F.Supp. 781, 783 (D.C.Minn.1969).

(2) The Congress found: " * * * many factors have made it uneconomic for the private insurance industry alone to make flood insurance available on reasonable terms and conditions; but * * * a program of flood insurance with large-scale participation of the Federal Government and carried out to the maximum extent practicable by the private insurance industry is feasible and can be initiated * * *." National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001, et seq., at 42 U.S.C. § 4001(b)(1), (2); *see Tex. Landowners Rights Ass'n v.*

*Harris,* 453 F.Supp. 1025 (D.C.D.C.1978), *aff'd.* 598 F.2d 311 (table) (D.C.Cir.1979), *cert. den.* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979).

8. Under the pertinent program here, the defendants could have provided the plaintiff with flood-insurance coverage of a maximum of $100,000.

9. The insured-contents of the plaintiff were housed in a flood-plain.

10. The partially-insured contents of the plaintiff's business-house were completely lost because of flooding on May 3–4, 1979, such loss exceeding the value of $100,000.

11. The defendants undertook to do for the plaintiff that which they had promised to do, but they were misfeasant in doing it in such an improper manner as to cause damage to the plaintiff.

### Proximate Causation

I. (1) " * * * 'The question whether [loss] in a given case is proximate * * * is always to be determined on the facts of each case upon mixed consideration of logic, common sense, justice, policy, and precedent.' * * * " *Lancaster v. Montesi,* 216 Tenn. 50, 390 S.W.2d 217, 220–221 (per curiam, 1965); *accord: Wyatt v. Winnebago Industries, Inc.,* 566 S.W.2d 276, 281[9] (Tenn.App., *per* Judge (now Justice) Dworota, 1977), *cert. den.* by the Supreme Court of Tennessee (1978).

(2) " * * * [O]ne who promises to do something for another, even gratuitously, and who would not be responsible for a failure or refusal [to so act] because this would be a mere nonfeasance, yet is liable if he [or she] undertakes to do what he [or she] promises and does it in such improper manner as to cause damage to his [or her] promisee[,] for this is misfeasance. * * * " *Glisson v. Stone, supra,* 4 Tenn.App. at 73.

12. Mr. William E. Webb, Jr., the highest official of the defendants who testified at trial herein, conceded the impropriety in Mr. Ashwood's undertaking to do what the defendants promised the plaintiff, as follows:

"Q. ' * * * [I]s there anything * * * that would cause you to say that Mr. Ashwood didn't have some responsibility to tell Mr. Swift that there were exclusions and/or exceptions to the all-risk policy?'

"A. 'Matt [Mr. Ashwood] should have explained to Mr. Swift that this is an all-risks policy "duplicating what you have, subject to the exclusions." '

"Q. 'And he should have told him that there were some exclusions?'

"A. 'Yes.'

\* \* \* \* \* \*

"Q. ' * * * [T]hey [the defendants' sales-representatives] should advise a customer that an all-risk policy has certain exceptions and exclusions?'

"A. 'Yes.'

"Q. 'And, that was the policy of the company at least as early as 1978?'

"A. 'Yes.'

"Q. 'You train your agents to tell that to the prospective customers?'

"A. 'Yes.'

\* \* \* \* \* \*

"Q. '[I]t would be advisable to put it [the same forewarning] in any written communication?'

"A. 'Absolutely.'

\* \* \* \* \* \*

"Q. ' * * * [B]ack when you were in the process of delivering policies to customers, would you point-out to them that they should read the exclusions?'

"A. 'Yes, * * * because [sic: if] it is not excluded in the policy, it's covered somewhere [else in it] generally.'

"Q. 'And, do you consider that * * * a minimum of responsibility to a customer, to point-that-out to him?'

"A. 'Yes.'

"Q. ' * * * I mean point-out the exclusions and call them to his attention and suggest that he read them?'

"A. 'If he isn't going to allow us the privilege of going-over them with him, then he should read them at his leisure.'

\* \* \* \* \* \*

"Q. 'Has Liberty Mutual made it a policy of instructing its sales-representatives to inform their clients of the availability of flood-insurance under this program [under the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001, et seq. and related legislation]?'

"A. 'Yes.'

"Q. 'And, that is certainly something that should be done if the client has a risk or exposure to flood-loss?'

"A. 'If there's an obvious potential to flood, yes.'

"Q. 'The way you[r] [agent] might determine if there is a potential loss as a result of flood is to make some inquiry of the customer?'

"A. 'Make an inquiry of maybe the area. * * *'

   \*    \*    \*    \*    \*    \*

"Q. ' * * * [A] reasonable amount of research would be in order on that point, at least in those situations * * * where the customer had come to the agent and said, "I need help with my insurance; I don't know what I have; I don't know what I need; give me a proposal and advise me of what I need"?'

"A. ' * * * [T]hat would be in order, if the prospective client suggested: "I don't know what I need; advise me of the coverages that I need and the coverages that are available; and, at the same time, give me a cost of what that will be."' * * * "

13. Such misfeasance of the defendants was a legal cause of such loss of the plaintiff, although not the sole cause.

J. " * * * It is sufficient if such act was a substantial factor in causing the harm. * * * " *Lancaster v. Montesi, supra,* 390 S.W.2d at 220–221.

14. Having promised to provide the plaintiff with all the insurance it needed and call its attention to any coverage(s) the plaintiff needed but lacked, the defendants caused such loss even if Mr. Ashwood did not foresee the exact manner of the occurrence sometime afterward of such loss.

K. (1) " * * * The defendant[s] need not [have] be[en] able to foresee the exact manner of the [loss'] occurrence, but only its general nature. * * * " *Wyatt v. Winnebago Industries, Inc., supra,* 566 S.W.2d at 281.

(2) " * * * [T]he mere lapse of time between the wrong and the [loss] does not prevent the wrong from being the legal cause of the injury. * * * " *Null v. Electric Power Board of City of Nashville,* 30 Tenn.App. 696, 210 S.W.2d 490, 495 (1948), *cert. den.* by the Supreme Court of Tennessee (1948).

15. The directors of the plaintiff-corporation intended to protect it with all the insurance it needed and instructed its president, who instructed Mr. Swift, to accomplish this at the minimum premium-cost; thus, upon all the evidence, it is probable that, had it not been for the misfeasance of the defendants, Mr. Swift would have added insurance-coverage (in the maximum amount available) against the risk of flood. Logic and common sense suggest that this would have been the course of action taken by the plaintiff.

L. (1) As the finder-of-facts herein, the Court must decide in this instance what the probabilities were. *Standard Oil Co. v. Van Etten,* 107 U.S. 325, 333, 1 S.Ct. 178, 184, 27 L.Ed. 319 (1882).

(2) " * * * The intended effect of the 'preponderance of the evidence' rule is that plaintiff's burden is to convince [the factfinder[s]] upon all the evidence * * * that facts asserted by the plaintiff are more probably true than false. * * * " *Burch v. Reading Company,* 240 F.2d 574, 578–579[6] (3d Cir.1957), *cert. den.* 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957).

Contributory Negligence

16. Mr. Swift was comptroller of the plaintiff. In April, 1979 he was engaged busily in the preparation of his employer's year-end records for the first time since his employment; he gave priority of his time and attention to that effort and did not read the aforenumbered policy until after the aforesaid loss.

■■ M. (1) As stated, *supra*, this action is viewed as being based on contract; negligence is not a defense to an action based on contract. *Dobson & Johnson, Inc. v. Von Weiland*, 644 S.W.2d 394, 397[4] (Tenn.1982).

(2) Furthermore: " * * * considering that the defendant[s'] [sales-representative, Mr. Ashwood] was acting for [the plaintiff]; that [the plaintiff] relied on the defendant[s] who[se] [representative] had much more knowledge as to the matter in hand than [Mr. Swift]; the hurry and lack of opportunity for examination when [the policy] was [delivered] and the difficulty of an amateur['s] understanding such a [document] suddenly * * *, the court cannot be required to hold [the plaintiff] estopped and deny [it] relief on this ground. * * *" *Glisson v. Stone, supra*, 4 Tenn.App. at 79 (headnote 3), quoted-from approvingly in *Routh v. Sanders*, 29 Tenn.App. 602, 199 S.W.2d 461, 463 (1946), *cert. den.* by the Supreme Court of Tennessee (1947), *reh. den.* (1947).

17. The defendants are liable to the plaintiff.

### III

### Damages

N. (1) " * * * The measure of damages * * * for the breach of a duty under a * * contract * * * to cover with insurance * * *" is " * * * the value of the property destroyed * * *." *Lancaster Mills v. Merchants' Cotton-Press & S. Co.*, 89 Tenn. 1, 14 S.W. 317, 330 (1890), cited in *Routh v. Sanders, supra*, 199 S.W.2d at 463.

■■ (2) But, the damages of the plaintiff herein, having been caused by the defendants' breach of their executory contract with it, they are liable to the plaintiff " * * * for the amount of insurance that would have been issued * * *" to protect the plaintiff against the risk and peril of flooding of the contents of its business-house. *Glisson v. Stone, supra*, 4 Tenn. App. at 71 (headnote 1).

18. That amount, as noted, *supra*, was $100,000.

### IV

■■ It is the consequent

### DECISION

of this Court, Rule 58(1), F.R.Civ.P., that the plaintiff Acron Corporation recover of the defendants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company damages of $100,000 and lawful interest thereon from May 4, 1979;[1] in all other aspects of its claims, the plaintiff hereby is denied all relief.[2]

---

1. The award of prejudgment interest is rendered under the Court's discretionary power to so do. *See Tyber v. Great Central Ins. Co.*, 572 F.2d 562, 564[4] (6th Cir.1978); *Farmers Chemical Ass'n v. Maryland Casualty Co.*, 421 F.2d 319, 323[5] (6th Cir.1970); *Johnson v. Tennessee Farmers Mut. Ins. Co.*, 556 S.W.2d 750, 752[2] (Tenn.1977); *Third Nat. Bank in Nashville v. Cotten*, 536 S.W.2d 330, 331, 333 (Tenn.1976); *Coke v. United Transp. Union*, 631 S.W.2d 142, 146[3] (Tenn. App.1982), *permis. app. den.* by the Supreme Court of Tennessee (1982).

2. The Court considered the alternative theories of recovery advanced by the plaintiff and concluded that the plaintiff would not be entitled to recover under any such theory an amount in excess of $100,000 plus applicable interest. Accordingly, the Court pretermitted all findings-of-fact and conclusions-of-law relating to issues the decision of which was deemed unnecessary to the results reached herein. *Immigration & Naturalization Serv. v. Bagamasbad*, 429 U.S. 24, 26, 97 S.Ct. 200, 201[1], 50 L.Ed.2d 190 (1976).

The Court adhered to its trial-ruling that the plaintiff was not entitled to introduce into evidence portions of the deposition of Mr. Swift. Since Mr. Swift was available and actually testified at trial, the use of his deposition as evidence by the plaintiff was not permissible. Rule 32(a), F.R.Civ.P.; *Salsman v. Witt*, 466 F.2d 76, 79[1] (10th Cir.1972); 8 Wright & Miller, Federal Practice and Procedure: Civil 449, § 2142. " * * * The deposition has always been, and still is, treated as a substitute a second-best, not to be used when the original is at hand. * * *" *Napier v. Bossard*, 102 F.2d 467, 469 (2d Cir.1939) (per Learned Hand, J.).