# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 5, 2000 Session

## EBBTIDE CORPORATION v. THE TRAVELERS INSURANCE COMPANY, ET AL.

**Appeal from the Chancery Court for Dickson County**
**No. 4244-96 Robert E. Burch, Chancellor**

_____

**No. M1999-01932-COA-R3-CV - Filed July 31, 2001**

_____

The insurance broker involved in this matter, Willis Corroon, failed to forward to Plaintiff the terms for reinstatement of Plaintiff's workers compensation policy, which terms were faxed to Willis Corroon by Travelers, the insurer. As a result, Plaintiff, Ebbtide Corp., was without insurance for several months, during which time one severe worker's compensation claim was filed and paid for by Plaintiff. The trial court determined that Tennessee Code Annotated section 56-6-147 was not applicable to Willis Corroon as an insurance broker; as such, Willis Corroon was the agent of Plaintiff, the insured. Thus, Travelers fulfilled its contract with Plaintiff by properly communicating the terms for insurance reinstatement to Plaintiff's agent, Willis Corroon. Willis Corroon was found to be negligent for not forwarding these terms on to the Plaintiff and liable for all damages incurred by Plaintiff as a result of their being uninsured. The preliminary question to be determined is whether section 56-6-147 applies in this matter to make Willis Corroon the agent of the insurance company. We agree with the trial court's determination that section 56-6-147 does not apply to the facts presented in this matter and affirm the trial court's ruling.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Affirmed as Modified

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and PATRICIA J. COTTRELL, JJ., joined.

Karyn C. Bryant and John M. Scannapieco, Nashville, Tennessee, for the appellant, Willis Corroon Corporation of Tennessee.

William G. McCaskill, Jr., Nashville, Tennessee, for the appellee, The Travelers Insurance Company.

John B. Carlson and Robert E. Hoehn, Nashville, Tennessee, for the appellee, Ebbtide Corporation.

# OPINION

## I
## Factual History

This matter concerns a dispute between an insured (Ebbtide Corp., hereinafter 'Ebbtide'), an insurance broker (Willis Corroon Corp., hereinafter 'Willis Corroon'), and an insurer (The Travelers Insurance Co., hereinafter 'Travelers').

Starting in 1986, Ebbtide used Willis Corroon as their insurance broker to assist them in obtaining all insurance except health insurance. Ebbtide was unable to obtain workers' compensation insurance in the open market, so Willis Corroon assisted them in obtaining this insurance from the assigned risk pool. Travelers was assigned to insure Ebbtide through the assigned risk pool beginning in 1986.

Over the course of their business relationship, a course of dealing emerged wherein premiums were assigned based on the estimated number of employees Ebbtide would employ for the upcoming year. As a result of using estimates, disputes would often arise regarding the amounts owed for coverage and would require an audit of the payroll records at the end of the year to adjust premiums paid for the previous year. Travelers would issue a Direct Notice of Cancellation ('DNOC') to Ebbtide that provided a date on which their coverage would expire, although Ebbtide rarely paid Travelers by that date since these disputes were often pending after the date payment was required. After a period of time, which could last from a few days to several months, the parties would obtain an audit of the payrolls and agree on a payment plan; the policy would then be reinstated without lapse. This course of dealing would occur with Willis Corroon acting as intermediary and negotiator between Ebbtide and Travelers.

The current dispute arose after Travelers sent Ebbtide a DNOC dated January 20, 1995, effective February 4, 1995. Travelers was requesting payment of $104,000.00 representing amounts allegedly owed as a result of under estimated payrolls for 1993, 1994, and 1995. The amounts owed for 1993 and 1994 were in controversy, as there was a dispute over prior payroll record audits for those periods. No audit had yet been performed for 1995.

On February 6, two days after the policy was cancelled, Ebbtide provided Willis Corroon with documentation to try to resolve the payroll dispute. This information was faxed to Travelers by Willis Corroon with a request that Travelers let them know the amount of money that could be paid by the next day to allow continuation/reinstatement of the policy. Travelers responded to Willis Corroon with a fax containing a payment plan and requested that Ebbtide overnight $32,168.00 to Travelers. This fax was only sent to Willis Corroon; Ebbtide was not sent a copy of the fax by either Willis Corroon or Travelers and did not receive this information, nor were they informed of its existence or terms until June 23, 1995.

Over the ensuing weeks, Travelers began trying to arrange an audit of Ebbtide's payroll records, referring to this audit as a 'cancellation audit'. (Representatives of Ebbtide testified to believing that this audit was merely an ordinary audit being performed to resolve the disputed payroll amounts.)

On February 27, Ebbtide received a call from Travelers regarding a recently reported workers' compensation claim. Ebbtide was informed that the policy of workers' compensation insurance had been canceled. However, representatives of Ebbtide testified at trial that workers' compensation claims had been refused in the past but paid after reinstatement of the policy once payroll issues were resolved and a payment plan was worked out.

The audit was conducted on March 28, and the following day Ebbtide sent a payment to Travelers. Travelers applied this payment to past due amounts, but refused to reinstate the policy without lapse. Ebbtide had believed that Travelers would reinstate their coverage without lapse as they had done on numerous occasions in the past. There was no other company from which Ebbtide could obtain workers' compensation coverage at that time due to being in the assigned risk pool.

In April of 1995, Ebbtide had its first opportunity to obtain workers' compensation coverage outside of the assigned risk pool with a company named EBI. EBI began covering Ebbtide for workers' compensation claims on April 17, 1995. However, on March 20, 1995, during the lapse period, a significant injury occurred resulting in a workers' compensation claim in excess of $140,000.00.

The trial court found that Tennessee Code Annotated section 56-6-147 dealing with agency of insurance agents did not apply to this situation and held that Willis Corroon was the agent of the insured, Ebbtide. In finding Willis Corroon negligent and liable to Ebbtide for damages, the substance of the court's opinion stated:

> Over their ten year relationship, a course of dealing evolved by which Ebbtide could obtain reinstatement without lapse in coverage of a policy which had been canceled for non-payment of premium. . . .

> Essentially, Travelers had waived the timely payment of premiums requirement of the contract or, at least, the parties had by their dealings modified the contract to allow continuation of insurance coverage past the cancellation date by Ebbtide complying with Travelers' reinstatement requirements. . . .

> . . .

> Travelers not only accepted late premium payments, it cooperated with Ebbtide in arranging the method and manner of the late payments. Therefore, the prompt payment provision of the insurance contract was waived and substituted therefor was

a "second chance" provision, which must be strictly complied with or the policy would be canceled.

This "second chance" provision was not complied with by Ebbtide. In other words, Ebbtide did not meet Travelers' reinstatement requirements. If Travelers had no role in Ebbtide failing to meet the reinstatement requirements, the contract was breached by Ebbtide and Travelers has no further liability thereunder. If Travelers (directly or thought its agent) failed to comply with its requirements under the "second chance" provision, then Travelers breached the contract and should be required to extend coverage during the disputed period. . . .

[T]he outcome of that inquiry depends upon whether WC [Willis Corroon] was the agent of Travelers or of Ebbtide.

. . .

The facts indicate the WC was the agent of Ebbtide. . . .

The agency inquiry is complicated by T.C.A. § 56-6-147 which, Ebbtide insists, makes WC the agent of Travelers and, thus, Travelers is liable for breach of contract.

. . .

An examination of the purpose of the statute is helpful at this juncture.

The purpose of the Tennessee statute is to prevent the insurance company from denying responsibility for representations and actions from the agent from whom applications are voluntarily accepted and to protect an applicant who relies on such representations or actions. . . . The statute is perfectly logical and its ends admirable[,] but it does not apply in this factual situation.

. . .

The next question is whether Travelers was required to send their reinstatement requirements directly to Ebbtide instead of just to WC as they did.

. . .

Travelers was required by the contract of insurance as modified by the course of dealing of the parties to send its reinstatement requirements to EITHER WC OR Ebbtide, but not both.

. . .

-4-

The Court has herein above found WC an agent of Ebbtide. . . .

WC had a duty to transmit Travelers' reinstatement requirements to Ebbtide withing a reasonable time after receiving them.

WC breached that duty by failing to so transmit.

Because of this breach, Ebbtide was damaged.

The damage incurred by Ebbtide because of WC's breach of its duty was foreseeable by WC.

Therefore, WC is liable to Ebbtide for its negligence.

The court went on to find Ebbtide without fault in this matter based on the past history of the parties' transactions, and in a separate order, determined that Ebbtide did not fail to mitigate its damages. Ebbtide was awarded damages in the amount of $144,111.32 for past amounts expended as a result of denied workers compensation claims, and Willis Corroon was ordered to pay any future reasonable and necessary expenses incurred under the provisions of the Travelers' workers' compensation policy that had previously insured Ebbtide. All claims against Travelers were dismissed.

The issues presented on appeal are: whether Willis Corroon was negligent; whether Willis Corroon's negligence was the proximate cause of Ebbtide's damages; whether Ebbtide's recovery should be reduced for failure to mitigate damages; whether Travelers properly canceled its insurance contract with Ebbtide; whether Travelers had a duty to send the reinstatement requirements to Ebbtide; whether Ebbtide was negligent; whether Tennessee Code Annotated section 56-6-147 applies to make Willis Corroon the agent of Travelers.

## II
## Analysis of Law

A. Application of section 56-6-147 of the Tennessee Code.

The principal question that must first be examined is who is the agent of whom under Tennessee law and the facts of this case. The trial court decided this case based on its determination that Willis Corroon was the agent of Ebbtide and that Tennessee Code Annotated section 56-6-147 did not apply to this situation. Thus, the first question to be determined is the applicability of section 56-6-147 under the facts of this case to Willis Corroon, an insurance broker doing business in the State of Tennessee.

1. Statutory Construction

Our courts have laid out some basic rules for statutory construction.

> The basic rule of statutory construction is to ascertain and give effect to the legislative intent. To ascertain this intent, we are primarily to derive the legislative purpose or intent from the natural and ordinary meaning of the language contained in a specific provision within the context of the whole statute. *National Gas Distributors, Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991); *Carroum v. Dover Elevator Co.*, 806 S.W.2d 777, 779 (Tenn.App. 1990); *Davenport v. Chrysler Credit Corp.*, 818 S.W.2d 23, 27 (Tenn.App. 1991). Courts should not displace the common law any more than is necessarily required, *In re Deskins' Estates*, 381 S.W.2d 921, 922 (1964), and should not restrict the statute's coverage or expand it beyond its intended scope. *Carroum*, 806 S.W.2d at 779. We note, however, that remediable statutes should be construed liberally to accomplish the objects, correct the evils, and suppress the mischief at which they are aimed. *Holland v. Celebrezze*, 223 F.Supp. 347 ed. (E.D. Tenn. 1963).

*Merryman v. Central Parking Sys., Inc.*, No. 01A01-9203-CH-0076, 1992 WL 330404 at * 5 (Tenn. Ct. App. Nov. 13, 1992) (overruled on other grounds). "In interpreting statutes the legislative intent must be determined from the plain language it contains, read in the context of the entire statute, without any forced or subtle construction which would extend or limit its meaning." *National Gas Distribs., Inc. v. State,* 804 S.W.2d 66, 67 (Tenn. 1991).

> [O]ur paramount responsibilities are to ascertain the legislative intent and to effectuate it. *State v. Bobo*, 727 S.W.2d 945, 952 (Tenn. 1987); *Long v. Stateline Sys., Inc.*, 738 S.W. 2d 622, 623 (Tenn. 1985). Initially, such intent is gathered from the natural, ordinary, and commonly accepted meaning of the language used in the statute itself. *Bobo*, 727 S.W.2d at 952; *Weaver v. Woods*, 594 S.W.2d 693, 695 (Tenn. 1980).

> In construing a statute the Court must give effect to every word, phrase, clause, and sentence of the act to achieve the legislature's intent. *United Canners, Inc. v. King*, 969 S.W.2d 525, 527 (Tenn. 1985); *City of Caryville v. Campbell County*, 660 S.W.2d 510, 512 (Tenn.App. 1983). "Every word used [in a statute] is presumed to have meaning and purpose and should be given full effect if doing so does not violate the obvious intention of the Legislature." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Furthermore, a statute should be construed, if practicable, so that its component parts are consistent and reasonable; inconsistent phrases should be harmonized, where possible, so as to reach the legislative intent. . . .

> Furthermore, when the legislature makes a substantial change in a statute that has been the subject of judicial construction, . . . the legislature is presumed to have been fully aware of the judicial construction and to have intended to alter the law.

> *Hamby v. McDaniel*, 559 S.W.2d 774, 776 (Tenn. 1977). When the legislature
> amends a statute, it presumably does so either to change the law or to clarify it.

*State v. Odom*, 928 S.W.2d 18, 29-30 (Tenn. 1996). It is in light of these principals that we examine the changes in and progression of Tennessee agency law since its enactment.

The original agency statute was enacted by the Tennessee legislature in 1907 and stated:

> [A]ny person who shall solicit an application for insurance shall in all matters
> relating to such application and the policy issued in consequence thereof be regarded
> as an agent of the company issuing the policy, and not the agent of the insured, and
> all provisions in the application and policy to the contrary are void and of no effect
> whatever; Provided, this Act shall not apply to licensed fire insurance brokers.

Tenn. Code Ann. §56-705, Law of April 12, 1907, ch.442, §1, 1907 Tenn. Pub. Acts 1497 (repealed 1975). This legislation was designed to protect consumers by binding insurance companies to the representations of their agents, preventing insurance companies from denying responsibility for the representations and actions of their agents. The intent of the Legislature in enacting the original agency statute was to protect consumers from unethical and corrupt insurance agents. *Industrial Life & Health Ins. Co. v. Trinkle,* 206 S.W.2d 414 (Tenn. 1947).

The purpose of this statute has been discussed by the courts of Tennessee on numerous occasions. In 1924 the supreme court said:

> It is apparent that the Legislature purposed affording to the insured a responsible
> connection with the insuring company, with which he was dealing, often times a
> nonresident corporate entity of uncertain address, with its identity, for purposes of
> legal notice, more or less obscure.
>
> The act contemplates that one who is recognized by an insurer as suitable and
> competent to handle its funds and deliver its policies is also suitable to represent it
> in respect to other matters arising in connection therewith.

*Maryland Cas. Co. v. McTyier*, 266 S.W. 767, 768 (Tenn. 1924).

As originally drafted, section 56-705 of the Code applied to "*[a]ny person* who shall solicit an application for insurance." In 1975 the code was amended to apply to "*[e]very agent or limited insurance representative* who solicits or negotiates and application for insurance of any kind." Tenn. Code Ann. §56-6-124, Law of April 21, 1975, ch. 68, §4, 1975 Tenn. Pub. Acts 103 (repealed 1988). This shift in application from 'any person' to 'every agent or limited insurance representative' is especially significant because the 1975 legislation also included a definition of the term 'insurance agent.' Insurance agent is defined as "an individual appointed by an insurer to solicit applications

for a policy of insurance or to negotiate a policy of insurance on its behalf." Tenn. Code Ann. §56-6-102, Law of April 21, 1975, ch.68, §3, 1975 Tenn. Pub. Acts 102 (repealed 1988).

In 1988 the General Assembly again changed the agency law and further refined the definition of 'insurance agent.' The current Code section enacted in 1988, which deals with agency in the context of insurance solicitation and negotiation, provides as follows:

> **Agent as representative of insurer. -** Every insurance agent or limited insurance representative who solicits or negotiates an application for insurance of any kind shall, in any controversy arising from the application for insurance or any policy issued in connection therewith between the insured and insured's beneficiary and the insurer, be regarded as the agent of the insurer and not the insured or insured's beneficiary. This provision shall not affect the apparent authority of an agent.

Tenn. Code Ann. §56-6-147 (2000). An "insurance agent" is now defined as "an individual who had an agency contract or agreement with an insurer to solicit or negotiate a policy of insurance on the insurer's behalf." Tenn. Code Ann. §56-6-132(4)(2000). These two sections must be read together, and in accordance with previously stated principles of statutory construction, in order to determine to whom the agency statute applies. Thus, agency is imposed when the matter involves "an individual who has an agency contract or agreement with an insurer to solicit or negotiate a policy of insurance on the insurer's behalf" and "who solicits or negotiates an application for insurance of any kind." As such, the controlling question becomes whether there is any evidence in the record that Willis Carroon had an agency contract or agreement with Travelers to solicit or negotiate a policy of insurance on behalf of Travelers.

Although the record contains a great deal of information regarding Ebbtide's contract and relationship with Willis Carroon, the record is devoid of any evidence of a contract or agreement of any kind between Willis Carroon and Travelers. Therefore, without this proof, section 56-6-147 does not apply to this matter and we are not forced to find Willis Carroon to be the agent of Travelers. However, this determination does not end the analysis, as we must now rely on common law principles to determine agency.

2. Analysis of Case Law

Tennessee agency law also includes a line of case law applying common law rules regarding brokerage and agency. In the case of *Glisson v. Stone*, 4 Tenn. App. 71 (1926), this Court dealt with the question of whether a party was a broker or an agent.

> [C]an the defendant be considered in this transaction with complainant acting as a broker. We take it that here, as elsewhere, the law cares little about names. The question is, what was the relation of the parties.
>
> . . .

"An insurance broker is one who acts as a middleman between the assured and the insurer, and who solicits insurance from the public under no employment from any special company, but having secured an order he either places the insurance with a company selected by the assured, or in the absence of any selection by him, then with a company selected by such broker. A broker is the agent for the insured, according to all authorities on the subject, though at the same time for some purpose he may be the agent for the insurer, and his acts and representations within the scope of his authority as such agent are binding on the insured." R. C. L., 868.

"Every broker is within a sense an agent, but every agent is not a broker. The chief feature which distinguishes a broker from other classes of agents is that he is an intermediary, or middleman, and, in accepting applications for insurance, acts in a certain sense as the agent of both parties to the transaction. Another distinction is that the idea of exclusiveness enters into an employment of agency, while in respect to a broker there is a holding out of oneself, generally for employment in securing insurance." Gay v. Lavina State Bank, 18 A. L. R., 1208.

"An agent who takes his principal's money under an express agreement to procure insurance, and unjustifiably fails to secure the same, or make an effort in that direction, thereby assumes the risk and becomes liable, in case of loss, to pay as much or the same as would have been covered by the insurance policy for which his principal had paid, provided the same had been procured as directed." Gay v. Lavina State Bank, supra.

".... and, as between the insured and his own agent or broker, authorized by him to procure insurance, there is the usual obligation on the part of the latter to carry out the instructions given him and faithfully discharge the trust reposed in him, and he may become liable in damages for breach of duty. If he is instructed to procure specific insurance, and fails to do so, he is liable to his principal for the damage suffered by reason of the want of such insurance. The liability of the agent with respect to the loss is that which would have fallen upon the company had the insurance been effected as contemplated. Negligence on the part of the agent, defeating in whole or in part the insurance which he is directed to secure, will render him liable to his principal for the resulting loss." Gay v. Lavina State Bank, supra.

*Glisson*, 4 Tenn. App. at 74-5. The *Glisson* court goes on to cite the North Carolina case of *Elam v. Smithedeal Reality & Ins. Co.* with approval.

> [W]hile the agent or broker in question was not obligated to assume the duty of procuring the policy, when he did so, the law imposed upon him the duty of performance in the exercise of ordinary care, and as a matter of contract it is said in some of the cases on the subject that the trust and confidence reposed in him as agent afforded sufficient consideration for the undertaking and carrying out the instructions given.

*Id.* at 76; *see also Bell v. Wood Ins. Agency,* 829 S.W.2d 153, 154 (Tenn. Ct. App. 1992); *Farmer v. Reed Keras Buick Co.,* 1986 WL 2304 (Tenn. Ct. App. Feb. 20, 1986); *Massengale v. Hicks,* 639 S.W. 2d 659 (Tenn. Ct. App. 1982).

A federal district court is the only court that has attempted to determine the exact question at issue in this case, and although we are not bound to follow its opinion, its decision is worth examination as it contains the common law principals for determining agency. The opinion of the western district court held as follows:

> The first task is to define the relationship between Sedgwick and SDG.

> The analysis of the relationship which exists between Sedgwick and SDG is complicated somewhat by a Tennessee statute. . . .

> [R]esearch by the court reveals that this statute was intended to protect consumers by binding insurance companies to the representations of local, sometimes unethical, solicitors. See *Industrial Life & Health Insurance v. Trinkle*, 30 Tenn. App. 243, 204 S.W.2d 827 (1947)(decision under prior statute). Furthermore, the overlap in nomenclature between insurance law and privilege law should not be allowed to cloud the inquiry. The term "agent" is used in a myriad of different contexts. What the *Smith* court meant by "agent" in the context of privilege law is clearly quite different from what the statute is attempting to classify for the purposes of insurance law. *See e.g. Glisson v. Stone*, 4 Tenn.App. 71 (1926)(stating in the course of determining whether the defendant was an insurance broker or agent, "the law cares little about names. The question is, what was the relation of the parties.") *Id.* at 74; *see also Upjohn*, 449 U.S. at 392, 101 S.Ct. 677 (eschewing labels when analyzing attorney client privilege in corporate communications).

> Both Sedgwick and SDG characterize Sedgwick as SDG's "broker or representative." *Couch on Insurance 3rd*. § 45:4 (1996) describes a broker as a "middleman between the insured and the insurer" "employed in each instance as a special agent for a single purpose" usually "involved in what can be viewed as a series of discrete transactions." *Id.* Couch goes on to list several factors to consider when determining

whether a person acts as a broker or agent, (1) who first set the agent in motion; (2) who controlled agent's actions; (3) who paid agent; and (4) whose interest agent was attempting to protect. *Id.* Aside from the lack of evidence regarding who paid Sedgwick once the coverage was written, it is clear that the remaining factors weigh heavily in favor of viewing Sedgwick as SDG's broker for the purposes of this transaction. *See generally Couch on Insurance 3rd*, Chapter 45 (1996). Because the court finds that Sedgwick was SDG's insurance broker, rather than either party's insurance agent, the Tennessee statute is not applicable to the instant case.

*Royal Surplus Lines Ins. Co. v. Sofamor Danek Gp. Inc.*, 190 F.R.D. 463, 470-71 (W.D. Tenn 1988).

That Ebbtide, and particularly Willis Corroon, believed Willis Corroon to be the agent of Ebbtide is attested to by the testimony of Scott Davis, Senior Vice President of Willis Corroon. He testified:

> A.     Willis Corroon represents the client or you, as you have it identified, the insured. We represent that insured to several different insurance companies and/or markets, as we would call them, and then we would market on behalf of the client to assure that our client was receiving the appropriate coverage and the most economical premiums available for those coverages, and we would seek out different insurance companies. With Ebbtide specifically being in the assigned-risk pool, that is a direct-bill situation.
> In our business, we have two types of bills. We have what we call agency bill, where it is billed by the agency, i.e., Willis Corroon, to the client. Willis Corroon collects that money and pays the insurance company, i.e., Travelers. In a direct-bill situation, the insurance company, being Travelers, directly bills and gets paid by the insured, being Ebbtide, and in this case and in assigned-risk cases, they are direct-bill situations.
> . . .
> Q.     And with respect to all the day-to-day dealings, it's a client service representative or customer service representative that handles all of the day-to-day, nitty-gritty stuff. Is that a fair statement?
> A.     That is a fair statement.
> Q.     And that was Ms. Ross?
> A.     Yes.
> Q.     Now, in that kind of a relationship that Willis Corroon had with Ebbtide during that period of time that you were the account manager, how would you characterize Willis Corroon's relationship with an obligation to Ebbtide, what were you?
> A.     I was in an oversight role of the entire boat program, and my primary role was to oversee the renewal process to assure that we had the most comprehensive and competitive programs available to Ebbtide and our other boat builders.

Q.     Did you consider yourself to be Ebbtide's broker?

A.     Yes, sir.

Q.     And in that relationship, who did you consider your client to be?

A.     I considered my client to be Ebbtide.

Q.     Now, as I understand it, Ebbtide's relationship with Willis Corroon in this case was one in which Ms. Ross would frequently, from time to time, intercede on Ebbtide's behalf to Travelers and have discussions with Travelers about various issues that pertained to Ebbtide's bills and premiums. Are you aware of that?

A.     I was aware that she did have.

Q.     And on occasions when Ms. Ross would be acting on behalf of Ebbtide to intercede with Travelers and have discussions with Travelers, it would be normal, would it not, for Travelers to respond to Ms. Ross when she was the one making the inquiry?

A.     That is correct.

Q.     And when she would receive responses and she was acting on behalf of Ebbtide, you would certainly expect her to pass along to Ebbtide whatever information she had received, wouldn't you?

A.     That is correct.

Q.     Let me refer you to something. In front of you is a book that I put together so I could keep myself organized with all these documents. Let me refer you to practically the last thing in the book. Actually, it's No. 61 in the book, if you'll see my little stickers there in the bottom right-hand corner.

Now, the document that's No. 61, if you will, look at it and tell me if you recognize it (indicating).

A.     Yes, I do.

Q.     Is that a page from Willis Corroon's proposal to Ebbtide to represent Ebbtide?

A.     That is a standard page in our typical proposal of insurance.

The document referred to by Mr. Davis as document No. 61 is a March 1994 proposal presented by Mr. Scott Davis and Gail Ross, Client Service Representative, on behalf of Willis Corroon to Ebbtide Corporation. This document reads, in large part:

INTRODUCTION

The Marine Industry Team of Willis Corroon is pleased to have the opportunity to present this proposal. In our opinion, selection of an insurance broker warrants the same degree of attention that an organization devotes to selecting its key executive personnel, legal representatives, or accounting firm. The broker selected should possess not only technical expertise within the marine industry but also the ability and willingness to perform in the midst of changing needs and conditions. Recognizing these requirements the National Marine Manufacturers Association selected Willis Corroon as the exclusive Broker to serve its membership.

Through the innovation and expertise of its personnel, Willis Corroon earned its position as a widely respected risk management and insurance brokerage firm. As the fourth largest insurance and reinsurance intermediary in the world, Willis Corroon maintains offices worldwide staffed by 11,000 professionals.

Willis Corroon reflects over 100 years of experience in responding to the risk management requirements of some of the largest firms in the nation. Those clients represent the entire spectrum of industries including marine, transportation, construction, health care, mercantile, and institutional organizations.

Our success as a risk management and insurance brokerage services firm is not achieved by fragmented individual performances, but rather by the synergistic effects which result when Willis Corroon professionals perform together. <u>Teamwork</u> is viewed as our key to success, and Willis Corroon's approach to program design, marketing, and service is to draw on the composite expertise of its professional staff. Through coordinated teamwork, Willis Corroon is able to provide responsive and professional risk management services to its clients. <u>We are on your staff but not on your payroll</u>.

In the remainder of this proposal, we have described Willis Corroon's service capabilities and the members of out staff who have been chosen to coordinate and deliver those services. We are proud of Willis Corroon's reputation for providing consistently high quality service to its clients in the marine industry and welcome your calls to any of our current clients to inquire about us.

<u>ACCOUNT SERVICE TEAM</u>

Responding to risk management service needs requires the knowledge and skills of a variety of professionals who are experienced in all aspects of risk management in the marine industry. Consequently, the individuals chosen by Willis Corroon for your service team have diverse education and experience backgrounds which combine skills form a number of applicable disciplines including marketing, finance, loss control, underwriting, and administration.

Brokerage services will be provided under the direction of Scott Davis. Mr. Davis is Vice President and has over 10 years of experience in the insurance industry. He is experienced in all aspects of the risk management process.

In 1990, the supreme court, in settling a commission question between an insurance broker and insurance carrier, found that the insurance broker in that case was the agent of the insurance carrier. *See Polk and Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.2d 538 (Tenn. 1990). However, *Polk* is distinguishable as that insurance carrier had issued a binder, or contract of

temporary of insurance, evidencing an agreement between the parties authorizing the broker to act on the insurer's behalf. There is no evidence of any contract or agreement between the insurer and broker in the case at bar.

### 3. Application

When we apply the analysis of statutory history and case law in the State of Tennessee we determine that Willis Corroon is a broker who was hired by Ebbtide to procure insurance for Ebbtide. The only evidence of agreements and contracts was of those between Ebbtide and Willis Carroon. No evidence of a contract or agreement between Willis Carroon and Travelers was introduced; thus, Willis Corroon does not come under the forced agency statute, Tennessee Code Annotated section 56-6-147. We rely on common law to determine whether or not Willis Corroon is an insurance agent or an insurance broker.

When we apply the analysis of *Glisson v. Stone* we can determine that Willis Corroon was indeed a broker, acting as a middle man between the insured and the insurer. Being a broker, Willis Corroon held itself out "generally for employment in securing insurance." As such, Ebbtide hired Willis Corroon to procure insurance in several different areas, including workers' compensation. Willis Corroon carried out the instructions of the insured and negotiated on the insured's behalf in settling disputes with regard to payroll records and premium payments.

In addition, when we look at the factors relied on by the federal court and stated in *Couch on Insurance 3rd*, § 45:4 we, like the federal court, find that "aside from the lack of evidence regarding who paid [Willis Corroon] once the coverage was written, it is clear that the remaining factors weigh heavily in favor of viewing [Willis Corroon] as [Ebbtide's] broker for the purpose of this transaction." *Royal Surplus Lines Ins. Co.*, 90 F.R.D. at 471. It is apparent from review of the record that Ebbtide hired Willis Corroon and set them in motion; Ebbtide controlled the actions of Willis Corroon, and Willis Corroon was attempting to protect the interest of Ebbtide. As such, we determine that Willis Corroon, in this matter and under the facts of this case, was acting as the agent of Ebbtide.

### III
### Willis Corroon was Negligent in Performing its Duties as Ebbtide's Agent

"It is a universal general rule that an agent or broker of insurance who, with a view to compensation for his services, undertakes to procure insurance for another, and unjustifiably and through his fault or neglect, fails to do so, will be held liable for any damage resulting therefrom." *Massengill*, 639 S.W.2d at 660; *see also Bell*, 829 S.W.2d at 154. Further, "[t]he measure of damages for breach of a contract to procure insurance is the amount which might have been recovered under such insurance if procured as agreed." *Farmer*, 1986 WL 2304 at *4. We find that the evidence does not preponderate against the court's determination that Willis Corroon unjustifiably and through negligence failed to perform its duties as a broker and agent for Ebbtide in the procuring of insurance. Willis Corroon failed in its obligation to "faithfully discharge the trust reposed in [it]," and as such, "is liable to [its] principle for the damage suffered by reason of the want

of insurance." *Gleason*, 410 App. at 75. We thus affirm the trial court's award of damages in this matter.

## IV
## Ebbtide's Negligence; Proximate Cause of the Injury; and Mitigation of the Damages

We believe the trial court properly found that Ebbtide was not negligent and was not liable for any of the damages resulting from the breach of insurance contract between Ebbtide and Travelers. The evidence does not preponderate against the trial court's finding that the original insurance contract between Ebbtide and Travelers had been modified by course of dealings to a contract which provided a second chance provision. Ebbtide had every right to rely on this contractual provision and its past dealings with Travelers in their belief that this current disagreement would be resolved and insurance would be reinstated in the same manner as had occurred in previous years. As such, Ebbtide's reliance on the belief that the "cancellation audit" was an audit of the same manner as had been performed in past years to assist in resolution to the dispute between Ebbtide and Travelers was reasonable and its actions, and lack of action, in reliance on this belief was also reasonable. Upon finding that the insurance coverage would not be reinstated and upon release by Travelers to obtain new insurance, Ebbtide was diligent in obtaining insurance with EIB. The court found that no insurance could have been obtained at an earlier date by Ebbtide and thus Ebbtide did not fail to mitigate its damages in this regard.

We further find that the evidence did not preponderate against the court's determination that Willis Corroon's negligence was the proximate cause of Ebbtide's damages. In the past Ebbtide had complied with Travelers' demands for partial payments in order to obtain reinstatement of coverage. In addition, Ebbtide had specifically requested an amount for payment to be made the following day. Thus, the court's determination that Ebbtide was willing to make, and would have made, such payment once an amount was provided by Travelers was not against the preponderance of the evidence. The only reason the requested payment was not made was due to Willis Corroon's breach of duty in not providing the payment information to Ebbtide. Had this information been provided to Ebbtide, the payment would have been made, and insurance coverage would have been continued by Travelers.

As Ebbtide committed no negligence of its own, and Travelers was not negligent in this matter, there was no rule or policy that relieved Willis Corroon of its wrongdoing, and the harm which resulted (the expense to Ebbtide resulting from a worker's compensation claim which was not covered by insurance) was foreseeable. We find that Willis Corroon's breach of duty was the proximate cause of Ebbtide's damages. *See McClenahan v. Cooley*, 806 S.W.2d 767 (Tenn. 1991) (three prong test for proximate cause).

## V
## Travelers was Not Negligent and Did Not Contribute to the Breach of Insurance Contract

The trial court determined that, through course of dealings, Travelers and Ebbtide had a contract which contained a "second chance" provision. This provision required Travelers to provide Ebbtide with terms for this "second chance" after the policy officially lapsed, which terms must be strictly complied with by Ebbtide. We agree with the trial court that Travelers fulfilled its duty under the contract by providing these terms to Willis Corroon, the agent for Ebbtide, via fax on February 6. The insurance contract was breached when Ebbtide, as a result of Willis Corroon's failure to forward the payment terms, failed to comply with the second chance provisions. Thus, Travelers was within its legal rights to cancel the insurance contract and not provide for reinstatement.

## VI
## Conclusion

Willis Corroon is, under the laws of the State of Tennessee, an agent of Ebbtide in this case. The Tennessee legislature rewrote the agency law in this state in 1988 making section 56-6-147 apply to only those individuals who have an agency contract or agreement to solicit or negotiate on that insurer's behalf. No such agreement or contract exists in this case. Common law of agency in Tennessee makes Willis Corroon the agent of Ebbtide under the facts of this case. Willis Corroon breached its duty in failing to transmit to Ebbtide the reinstatement requirements provided to Willis Corroon by Travelers. As a result, Ebbtide breached the contract of insurance with Travelers allowing Travelers to cancel the insurance policy. As the breach of insurance contact between Ebbtide and Travelers was proximately caused by the negligence of Willis Corroon, Willis Corroon is liable for all ensuing damages as would have been covered under the contract of insurance between Ebbtide and Travelers Insurance. We affirm the trial court's ruling and remand for further proceedings not inconsistent with this opinion.

_____
WILLIAM B. CAIN, JUDGE

-16-