IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 5, 2008 Session

## KRISTEN COX MORRISON v. PAUL ALLEN ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 05-1489-1     Claudia Bonnyman, Chancellor**

_____

**No. M2007-01244-COA-R3-CV - Filed January 30, 2009**

_____

Wife sued the insurance company for failure to pay on Husband's life insurance policy and the insurance brokers for failure to procure an enforceable life insurance policy, various torts and violation of the Tennessee Consumer Protection Act ("TCPA").  Wife settled with the insurance company before trial and won judgments against the brokers based on failure to procure an enforceable life insurance policy ($1,000,000.00); negligence, negligent misrepresentation, and breach of fiduciary duty ($300,000.00); and violation of the TCPA (an additional $300,000.00).  Defendants appeal, claiming that they should receive a credit for the amount of the settlement with the insurance company and that the other awards were improper for various reasons.  We affirm the $1,000,000.00 judgment but find that a credit for the settlement is appropriate.  We affirm the tort award.  We also affirm the finding of a violation of the TCPA and affirm the award of the additional $300,000.00.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., joined.  PATRICIA J. COTTRELL, P.J., M.S., not participating.

William R. Hannah, John G. Jackson, and Richard W. Bethea, Jr., Chattanooga, Tennessee; and Peter H. Curry, Nashville, Tennessee; for the appellants, Paul Allen, Jody Roberts, individually, and d/b/a Allen and Roberts Group, and Wiley Bros.--Aintree Capital, LLC.

Donald Capparella and Amy J. Farrar, Nashville, Tennessee, for the appellee, Kristen Cox Morrison.

## OPINION

Background

Howard Morrison held a $300,000 term life insurance policy with First Colony beginning in 2000.  In December 2002, he was convicted of driving while impaired.  In January 2004, Mr.

Morrison met with Paul Allen and Jody Roberts to discuss family financial planning matters. At a meeting on February 10, 2004, Allen and Roberts met with Howard and Kristen Morrison and recommended life insurance amounts of one million dollars for Mr. Morrison and $250,000 for Mrs. Morrison. Allen filled out most of the applications based on information he alleges Mr. and Mrs. Morrison provided in person at the February 10, 2004 meeting or over the phone in February. The Morrisons signed the applications for replacement life insurance policies with American General on February 27, 2004. They received the completed applications in the mail. There was no cover letter with directions, just the completed applications with "sticky notes" indicating where to sign. Mrs. Morrison admits neither she nor her husband read the applications before signing.

The American General policies were issued May 11, 2004. Mr. Morrison let the First Colony insurance policy lapse. Unfortunately, he died in a car accident July 11, 2004. His new American General insurance policy was in its two-year contestability period. American General denied Mrs. Morrison's claim on October 28, 2004, because Mr. Morrison's answer to question 17E of the insurance application was false: "No" was marked in response to the question "In the past five years, have any proposed insureds been charged with or convicted of driving under the influence of alcohol or drugs or had any driving violations?"

Mrs. Morrison sued Paul Allen and Jody Roberts individually and as the Allen and Roberts Group, their employers Wiley Brothers and Aintree Capital, LLC, and American General. Prior to the trial, Mrs. Morrison settled with American General, dismissing her claim in return for a payment of $900,000. After the trial, the chancellor found the remaining defendants liable for breach of contract for failure to procure an enforceable life insurance policy and awarded Mrs. Morrison $1,000,000.00, plus prejudgment interest, for a total of $1,247,120.94.

The chancellor also found the defendants liable for breach of fiduciary duty, negligence, and negligent misrepresentation in the amount of $300,000.00 for the loss of the First Colony life insurance policy on Mr. Morrison. The chancellor further found "that the tortious actions of the defendants were willful and knowingly reckless, and deceptive, and in violation of the Tennessee Consumer Protection Act." Therefore, the chancellor doubled the $300,000.00 award to $600,000.00, with prejudgment interest on the $300,000.00 in the amount of $74,135.38. Additionally, the chancellor awarded attorney's fees and costs totaling $198,285.47. The chancellor found no comparative fault against the Morrisons or American General. The defendants appealed, raising numerous issues.

Standard of Review

The chancellor's findings of fact are reviewed de novo by the appellate court with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Conclusions of law are reviewed de novo with no presumption of correctness. *Daron v. Dep't. of Corr.*, 44 S.W.3d 478, 480 (Tenn. 2001). Since trial courts are able to observe witnesses as they testify and assess their demeanor and other indicators of credibility, an appellate court will

not re-evaluate a trial court's assessment of witness credibility absent clear and convincing evidence to the contrary. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

Analysis

I. The DUI Question

The defendants adamantly maintain that the preponderance of the evidence (their testimony) is that on January 29, 2004,[1] Allen and Roberts asked Mr. Morrison whether he had had a DUI in the past five years and that Mr. Morrison answered in the negative. Allen also testified that he asked Mr. Morrison the question over the phone. Roberts testified he heard Allen going over the application on the phone with Mr. Morrison, but he did not hear the specific question being asked. With Mr. Morrison dead and Mrs. Morrison neither present at the January meeting nor participating in the phone conversation, there is no one who can testify to the contrary. That does not mean the evidence must be accepted by the trier of fact at face value or that it cannot be refuted in some other manner.

The chancellor found "that Mr. Allen is not a credible witness in regard to the applications and application process." The chancellor saw the witnesses testify and observed their demeanor. This court will not lightly dismiss a credibility determination made by the trier of fact. Since the defendants have not put forth any "clear and convincing evidence" that the credibility determination is in error, we will not re-evaluate it. *Wells*, 9 S.W.3d at 783. The credibility determination in effect negates Allen's testimony about the January meeting and the phone conversation with Mr. Morrison. This court has said that "on an issue which hinges on witness credibility, [a trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary." *Tenn. Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974). *See also State Dept. of Children's Servs v. A.M.H.*, 198 S.W.3d 757, 762 (Tenn. Ct. App. 2006).

The only other evidence that the DUI question was asked is the testimony of Roberts, who said that Allen asked Mr. Morrison as they were leaving the January meeting whether he had "ever gotten a DUI or any speeding tickets in the past few years." Yet, neither Roberts' nor Allen's notes reflect that this question was asked or answered. It is also interesting to note that Roberts testified that Mr. Morrison's answer was "No, that he did not have a DUI in the past." Technically, this would be a correct answer since Mr. Morrison was actually convicted of driving while impaired.[2] Driving while impaired and driving under the influence are separate offenses. *See* Tenn. Code Ann.

---

[1] This was the initial meeting where Mr. Morrison first met with Allen and Roberts to determine whether he wanted to do business with them.

[2] The offense of driving while impaired was repealed effective July 1, 2003. Tenn. Code Ann. § 55-10-418(a).

§§ 55-10-401 and -418(a); *State v. Humphreys*, 70 S.W.3d 752, 763 (Tenn. Crim. App. 2001). It appears from the testimony, however, that the latter part of the application question, regarding any other driving violations, was not asked at the January meeting.[3]

Other facts shed some light on whether the question was asked. During the medical examination required as part of the life insurance application process, Mr. Morrison was asked if he had a restricted driver's license. The nurse correctly marked the answer as "yes." This is a clear indication that Mr. Morrison was not trying to hide his conviction since the conviction is what led to the restricted license. Furthermore, the evidence shows that the entire application process was marked by an inattention to detail and casual attitude toward accuracy on the part of Allen and Roberts. For example, Roberts had seen Mr. Morrison smoke cigars, yet the brokers marked "no" on the application question regarding use of tobacco products. Roberts and Allen knew that Mr. Morrison had an insurance policy and intended to replace it with the new policy, but on the application they indicated that Mr. Morrison had no existing coverage. Allen never asked Mrs. Morrison any questions from the application except for a brief phone call during which he asked for her drivers license and social security numbers. He got the rest of her information from Mr. Morrison. Yet, Allen certified that he personally saw the proposed insured on the date of the application, asked each question and accurately recorded the answers.

We find that the chancellor's conclusion that the DUI question was not asked does not conflict with the preponderance of the evidence.

## II. Failure to Read the Application

The defendants maintain that Mr. Morrison's failure to read the application, and thus locate and correct the errors therein, bars an award for breach of contract or tort. In order to determine the validity of their contention, we must examine the nature of the defendants' relationship with Mr. Morrison.

There is no dispute that Roberts and Allen were insurance brokers. They agreed to procure a one million dollar life insurance policy on Mr. Morrison's life. Many years ago, this court said:

> 'An insurance broker is one who acts as a middleman between the assured and the insurer, and who solicits insurance from the public under no employment from any special company, but having secured an order he either places the insurance with a company selected by the assured, or in the absence of any selection by him, then with a company selected by such broker. A broker is the agent for the insured, according

---

[3]The chancellor did not consider the difference between DWI and DUI "to be particularly material or relevant," however, the significance of the distinction depends on exactly what question, if any, Allen asked Mr. Morrison.

to all authorities on the subject, though at the same time for some purpose he may be the agent for the insurer, and his acts and representations within the scope of his authority as such agent are binding on the insured.' R. C. L., 868.

*Glisson v. Stone*, 4 Tenn. App. 71, 74 (1926).  The court further indicated:

Every broker is within a sense an agent, but every agent is not a broker. The chief feature which distinguishes a broker from other classes of agents is that he is an intermediary, or middleman, and, in accepting applications for insurance, acts in a certain sense as the agent of both parties to the transaction. Another distinction is that the idea of exclusiveness enters into an employment of agency, while in respect to a broker there is a holding out of oneself, generally for employment in securing insurance.

*Id.* (quoting *Gay v. Lavina State Bank*, 202 P. 753, 755 (Mont. 1921)).  Thus, as the Morrisons' insurance brokers, Roberts and Allen were agents for the Morrisons.

Roberts and Allen were engaged by the Morrisons to acquire a new one million dollar life insurance policy for Mr. Morrison and to assist in financial planning due to their experience in these areas.  The Morrisons relied on the superior knowledge of Roberts and Allen.  As agents, Roberts and Allen had the duty to faithfully discharge the trust the Morrisons placed in them.  *Glisson*, 4 Tenn. App. at 75.  Roberts and Allen breached their agreement to acquire the new one million dollar life insurance policy.  When an agent/broker violates his duty to the insured to acquire insurance, the liability of the agent/broker is measured by the amount which could have been collected from the insurer had the insurance been obtained.  3 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 46:41 (3d ed. 2008); *Glisson, 4 Tenn. App.* at 75.  *See also Bell v. Wood Ins. Agency*, 829 S.W.2d 153, 154 (Tenn. Ct. App. 1992) ("It is the universal rule that an agent or broker of insurance who is compensated for his services and undertakes to procure insurance for another and unjustifiably fails, will be held liable for any damage resulting."); *Massengale v. Hicks*, 639 S.W.2d 659, 660 (Tenn. Ct. App. 1982).

The failure of Mr. and/or Mrs. Morrison to read the application does not relieve Roberts and Allen of the contractual duty to acquire a $1,000,000.00 life insurance policy on Mr. Morrison.  There are circumstances where the reading of an insurance application or policy is not required.  In *Berryhill v. Mut. Benefit Health & Accident Ass'n*, 262 S.W.2d 878 (Tenn. Ct. App. 1953), this court addressed a situation where

the insured had had some physical troubles which had cleared up and the agent said they would not prevent the issuance of the policies. The agent wrote wrong answers in the application without the knowledge of the insured and the policies were issued. The insured told the truth and there was no fraud and no collusion between the agent and the insured.

*Berryhill*, 262 S.W.2d at 880. The *Berryhill* court examined an unpublished Court of Appeals decision in *Natl Life & Acc. Ins. Co. v. Blackburn*, filed March 26, 1949, wherein Judge Felts wrote:

> The insured and plaintiff had told the agents of defendant all they knew about his condition, his past ailments, and treatments by the local doctor; and they had no reason to suppose that the agents had not given their principal every fact material for it to know; nor had they any ground to suppose that any of such matters as were material had not been properly recorded in the application.
>
> *In these circumstances we think there was no duty upon the insured to search among the numerous provisions of the policy and the application and try to discover whether the latter contained any material misrepresentations.* As a matter of fact, no layman would be equal to such a task. No one could know what constituted a material misrepresentation unless he was thoroughly familiar with the numerous decisions and discussions in textbooks dealing with that question.

*Berryhill,* 262 S.W.2d at 879 (quoting unreported opinion in *Nat'l Life & Accident Ins. Co. v. Blackburn*) (emphasis added). The *Berryhill* court upheld the jury verdict against the insurer.[4] Similarly, in *Glisson*, the circumstances led the court to determine that the insured's failure to read the application did not absolve the agent/broker of liability for failure to obtain a proper policy. *Glisson*, 4 Tenn. App. at 79 (defendant was acting for complainant, complainant relied on the defendant who had much more knowledge of the matter, complainant signed application before it was filled out and never saw it again); *see also Bell*, 829 S.W.2d at 154 (failure to read and understand policy or application does not defeat policy-holder's claim against insurance broker relied upon for his expertise).

Thus, under Tennessee law, an insured who does not read the insurance application may recover from someone[5] with superior knowledge upon whom he relies in the completion of the application, whether that someone is the insured's agent/broker or the insurance company acting through its own agent, when that person makes a material mistake or misrepresentation in the

---

[4]*Berryhill* dealt with a suit against the insurer, not a broker. However, it illustrates the relevant point of the law that when a person relies on another, more informed person to fill out an insurance application, the proposed insured is not necessarily obligated to review the application. It has been suggested that the applicant in *Berryhill* signed a blank form, *Smith v. Tenn. Farmer's Life Reassurance Co.*, 210 S.W.3d 584, 591 n.7 (Tenn. Ct. App. 2006), but that is not clear from the opinion.

[5]Note that we are talking about recovery from an agent/broker for failure to procure a policy, not recovery against an insurer on a policy.

application.[6]   Consequently, we find that the failure of Mr. and/or Mrs. Morrison to read the insurance application does not absolve the defendants of their duties to the Morrisons.

### III.  Credit for the American General Settlement

Mrs. Morrison settled her claim against American General for $900,000.00.  The defendants maintain that they should receive a credit in that amount against their breach of contract liability of $1,000,000.00.  They point to the principle that an injured party is only entitled to be placed in the position he or she would have occupied had the contract been fully performed, not to profit or be placed in a position better than the one for which he or she contracted.  *Metro. Gov't of Nashville & Davidson County v. Cigna Healthcare of Tenn., Inc.*, 195 S.W.3d 28, 35 (Tenn. Ct. App. 2005).  Mrs. Morrison counters with the argument that a non-settling tortfeasor is not entitled to credit for a settlement, citing *Williams Holding Co. v. Willis*, 166 S.W.3d 707, 712 (Tenn. 2005) as support.  This proposition has no application to the matter at hand because the defendants were found in breach of contract.[7]

A threshold question is whether the defendants should have made an offer of proof regarding the settlement amount.  In their motion to alter or amend and to reopen proof, the defendants sought to introduce proof of the settlement amount and to receive credit for that amount against the judgment of breach of contract.  The trial court denied the motion, saying:

> This Court finds that the defendants have not met the standards necessary to reopen the proof to introduce the amount of the settlement.  This Court had excluded the evidence of the amount of the settlement in response to the plaintiff's motion in limine, by this Court's Order dated October 26, 2006.  Defendants were aware that the evidence was excluded, and had the opportunity to make an offer of proof during the trial of this case to contend that the plaintiff had mitigated her damages by settling with American General and seeking to introduce the amount of the settlement, and chose not to do so.  The defendants did not present sufficient

---

[6]Undoubtedly, the intent to negate reliance is why insurance companies and agents generally require the applicant to review the application.  The mistakes of the agent in filling out the form would then arguably become the mistakes or misrepresentations of the applicant, if left uncorrected.  Of course, not every mistake or misrepresentation will void a policy.  *See* Tenn. Code Ann. § 56-7-103:

> No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

[7]It is true that the trial court used *Williams Holding Co.* as justification for granting Mrs. Morrison's motion in limine to exclude evidence as to the amount or terms of the settlement with American General.  However, the trial court's decision on the merits rested on a breach of the contract to procure an enforceable policy.  The defendants were found liable to Mrs. Morrison in tort, but as to another insurance policy.

procedural ground for this Court to take the unusual step of reopening the proof on a motion to alter and amend.

In addition, this Court finds that the defendants do not have a legal basis to receive a credit for any amount paid by American General. This is not a case of joint and several liability between American General and the defendants, as the defendants are independently liable for their own acts and omissions.

Normally the failure to make an offer of proof would be the end of the inquiry. However, certain comments by the chancellor require further consideration. Before the defendants put on their case at trial, their attorney sought to revisit the grant of the motion in limine excluding evidence of the amount of the settlement. After defendants' counsel observed that "I'm going to have to make some sort of offer of proof in defense of the contract action, at least I think I'm entitled to," a discussion of several pages followed. The transcript reveals the following comments:

> THE COURT: . . . I think the issue of credit is a real issue which should be addressed along with the settlement after the trial is over and judgments are rendered. I think the credit issue is a real issue. . . And so the Court is not - - I'm not saying that I'm going to grant a credit or a contribution. I'm just saying that the right doesn't arise until after the case is over, judgments are rendered, if there are judgments. And at that point, the court looks at credits and contributions, but not until - - I mean, we're really sort of maybe wasting time to address it now.
>
> MR. CAPPARELLA [attorney for plaintiffs]: Thank you, Your Honor.
>
> MR. CURRY [attorney for defendants]: I'm protected. That's all I care about, is at some point, depending on what the Court does, that I will have an opportunity. That's all.
>
> THE COURT: I think you'll have an opportunity to address it.
>
> MR. CURRY: Yes. That's what I mean.
>
> THE COURT: All right.
>
> MR. CURRY: I've been on the Court of Appeals in front of Judge Coats [sic] too many times where he looked down and said did you raise this issue.

Defendants' counsel was obviously trying to avoid the very situation in which he now finds himself — justifying why he made no offer of proof. He thought he should do so, but the chancellor said he was premature and would get an opportunity to raise the matter after judgments, if any, were issued. When defendants' counsel raised the issue later, the chancellor said he should have made an offer of proof earlier.

As our Supreme Court has stated, "[p]ermitting additional proof, after a party has announced that proof is closed, is within the discretion of the trial court, and unless it appears that its action in that regard has permitted an injustice, its exercise of discretion will not be disturbed on appeal." *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 149 (Tenn. 1991). While making an offer of proof during the trial would have been the better procedure, the chancellor told the defendants' counsel that the proof should be addressed after the judgments, if any. Counsel accepted that assurance, relied upon it and then found out too late that he should have gone ahead with the offer of proof earlier. Given the above-quoted exchange with the trial court, we think that the court erred in refusing to allow proof of the amount of the settlement.

The chancellor also ruled that there was no legal basis for a credit. As a general rule, "[w]here a coverage action against an insurer is joined with an action against an insurance agent or broker for failure to procure coverage, establishing the liability of either defendant generally will exonerate the other." Robert Michael Ey, 14 *Causes of Action* 881 § 3 (2008). It has, however, been noted that "even where an insured has settled and released an insurer, the agent may remain personally liable in tort to the insured for failing to procure the proper insurance."[8] *Appleton Chinese Food Serv., Inc. v. Murken Ins. Inc.*, 519 N.W.2d 674, 678 (Wis. Ct. App. 1994). This is because the agent/broker owes a duty to the insured. *Glisson*, 4 Tenn. App. at 74. The defendants violated this duty. The chancellor found the defendants liable for breach of contract for failure to procure an enforceable life insurance policy and awarded Mrs. Morrison $1,000,000.00, plus prejudgment interest, for a total of $1,247,120.94.

This is an appropriate case for the defendants to receive a credit for the American General settlement amount. "It is the universal rule that an agent or broker of insurance who is compensated for his services and undertakes to procure insurance for another and unjustifiably fails, will be held liable for any damage resulting." *Bell*, 829 S.W.2d at 154. The Morrisons sought a $1,000,000.00 insurance policy on Mr. Morrison. The failure to procure an enforceable $1,000,000.00 insurance policy would normally result in damages of $1,000,000.00. In light of the settlement, however, Mrs. Morrison was not damaged to the extent of the entire $1,000,000.00. The $900,000.00 settlement mitigated her damages to $100,000.00. Consequently, we must reduce the trial court's award of $1,000,000.00 against the defendants for failure to procure an enforceable policy to an award of $100,000.00.

## IV. The Tort Award

The chancellor found the defendants liable for breach of fiduciary duty, negligence, and negligent misrepresentation in the amount of $300,000.00 for the loss of the First Colony life insurance policy on Mr. Morrison. The defendants challenge this ruling, claiming that Mrs. Morrison failed to prove causation.

---

[8] "An action against an insurance agent or broker for failure to properly procure insurance coverage can generally be brought either as a negligence action or as an action for breach of a contract to procure insurance." 14 *Causes of Action* 881 § 2. Usually, which theory is invoked makes no difference. *Id.*

A cause of action for negligence requires the plaintiff to prove five elements: "(1) a duty of care owed by the defendant to the plaintiff, (2) conduct by the defendant breaching that duty, (3) an injury or loss to the plaintiff, (4) causation in fact, and (5) proximate or legal cause." *Waste Mgmt., Inc. of Tenn. v. S. Cent. Bell Tel. Co.*, 15 S.W.3d 425, 430 (Tenn. Ct. App. 1997). The defendants initially claim that causation in fact has not been proven. Causation in fact is "the cause and effect relationship that must be established between the defendant's conduct and the plaintiff's loss before liability for that particular loss will be imposed." *Id*. at 430. In other words, to satisfy this element of the negligence cause of action, Mrs. Morrison must prove that the defendants' conduct was the cause in fact of the loss of the $300,000 policy on Mr. Morrison's life.

In support of their argument, the defendants focus on the following portion of the trial court's oral ruling:

> The court also finds the plaintiffs prevailed in their cause of action for tort in that the defendants breached their duty, their fiduciary duties, to the plaintiff in failing to adequately and properly provide the application for insurance to American General. There are other torts which really provide simultaneous and not additional damages, which are negligent misrepresentation.
>
> But the overall - - and I think the correct way to describe the tort is to say that it was negligence, professional negligence, on the part of the defendants who are both financial planners and insurance agents.
>
> The damages in the tort theory or tort verdict in favor of the plaintiff is the loss of the $300,000 First Colony life insurance policy and the protections that it provided.

The defendants maintain that "[a]bsent from the trial court's bench ruling or Final Judgment is any finding that the First Colony policy would not have been lost if Defendants had, instead of negligently filling out the application, properly filled out the application."

A bench ruling is not always a well-organized speech. It reflects the trial court's views of the evidence and the law, but to expect a judge to speak extemporaneously while simultaneously organizing his or her thoughts with the cogency of a legal article is unfair to the judge. One cannot focus on one part of an oral ruling to the exclusion of others. It must be viewed as a whole and in light of the subsequent written order. The written order clearly links the defendants' negligence with the loss of the First Colony policy.

> This Court also finds that the defendants are liable to the plaintiff, Kristen Morrison, under the theories of breach of fiduciary duty, negligence, and negligent misrepresentation for $300,000 for the loss of the $300,000 First Colony Life Insurance Policy on Howard Morrison's life, a policy that was in force and past the two year contestability period at the time the Morrisons sought the advice of the defendants.

-10-

The trial court's findings support this causal link. The trial court found that Allen wrote on the agent's report that there was no existing insurance when he knew Mr. Morrison had the First Colony policy.[9] He also knew that the policy was valuable in that the contestability period had passed, yet the trial court found that neither he nor Roberts advised the Morrisons "that it could be against their interests to let the first policy lapse as soon as the second policy was issued since the second policy could be contested." These findings are supported by a preponderance of the evidence.[10]

The defendants also argue that the trial court erred when it did not assign any fault to the Morrisons under the doctrine of comparative fault. They maintain that the Morrisons were negligent in not reading the application, citing *McPherson v. Fortis Ins. Co.*, M2003-00485-COA-R3-CV, 2004 WL 1123529 (Tenn. Ct. App. Jan. 12, 2004) in support of their argument. *McPherson* was an action to recover benefits under a health insurance policy. *McPherson*, 2004 WL 1123529, at *2. It is well established that the "I didn't read it" defense is not effective against the company issuing the policy. *See Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W.3d 584, 591 (Tenn. Ct. App. 2006), and cases cited therein. The instant case is not to enforce the policy, but to hold the defendants liable for not procuring an enforceable policy. The trial court did not allocate any fault to the Morrisons. As we have already found earlier in this opinion, under Tennessee law, an insured who does not read the insurance application may recover from someone with superior knowledge upon whom he relies in the completion of the application, whether that someone is the insured's agent/broker or the insurance company acting through its own agent, when that person makes a material mistake or misrepresentation in the application. Under the circumstances of this case, we concur with the chancellor's determination.

V. Tennessee Consumer Protection Act ("TCPA")

The trial court found "that the tortious actions of the defendants were willful and knowingly reckless, and deceptive, and in violation of the Tennessee Consumer Protection Act." The defendants argue that the second amended complaint's TCPA claim does not state with particularity that the failure to advise Howard Morrison about contestable policies was deceptive and unfair.

It is true that this court has said that TCPA claims "must be pleaded with the same particularity that Tenn. R. Civ. P. 9.02 requires of common-law fraud claims." *McLean v. Bourget's Bike Works, Inc.*, No. M2003-01944-COA-R3-CV, 2005 WL 2493479, *7 (Tenn. Ct. App. Oct. 7, 2005). However, we must also be mindful that the TCPA is not intended to be a codification of the common law. *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). The TCPA provides "additional, supplementary state law remedies to consumers victimized by unfair or

---

[9] This failure made it impossible for American General to notify First Colony, as required by Department of Commerce and Insurance Rule 0780-1-24-.07(2)(b). We note that this rule is authorized by Tenn. Code Ann. § 56-8-104(11), regarding unfair methods of competition and unfair or deceptive acts or practices in the business of insurance. American General did eventually find out about the First Colony policy.

[10] In light of our approval of the negligence judgment, we deem it unnecessary to examine the judgments of breach of fiduciary duty or negligent misrepresentation.

deceptive business acts or practices." *Id*. The act is remedial and should be construed "liberally to protect consumers in Tennessee and elsewhere." *Id.; see also* Tenn. Code Ann. § 47-18-115. In the TCPA context, we must also examine the sufficiency of the pleading "in light of Tenn. R. Civ. P. 8.01's liberal pleading standards." *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275-76 (Tenn. Ct. App. 1999).

> Count IV of the second amended complaint involves the TCPA. Paragraph 66 alleges: [t]he defendants . . . in their desire to sell a life insurance policy to Howard Morrison and earn a commission therefrom, acted recklessly, unfairly and deceptively in processing Howard Morrison's and Kristen Morrison's applications for life insurance with American General. As a direct result of their reckless, unfair and deceptive acts and omissions, the defendants . . . have left the plaintiff, Kristen Morrison, without any life insurance benefits to take care of herself and her son, which was the express purpose of her husband obtaining a life insurance policy."

The defendants argue that the second amended complaint's TCPA claim does not state with particularity that the failure to advise Howard Morrison about contestable policies was deceptive and unfair. Specifically, the defendants maintain in their brief that the complaint "alleged that the *processing of the life insurance applications* was the root of the TCPA claim, not the lack of advice from Defendants." (emphasis in original). We decline to read the word "processing" so narrowly. We believe that when a person is dealing with an insurance broker, part of the "processing" of the application is the giving of advice as to the implications of replacing the old insurance policy with the new one. Mrs. Morrison alleged the process in which the defendants engaged was reckless, unfair and deceptive, and left her with no life insurance benefits from either the new or the old policy. This, in our opinion, is sufficient.

> Next, the defendants argue that the trial court's TCPA ruling transformed ordinary negligence into an unfair and deceptive practice. The trial court found:

> the deception in this case was when the defendants failed to adequately or truthfully or accurately describe the characteristics of the product they were selling; in that the replacement policy, the defendants failed to tell the plaintiffs that the replacement policy they proposed did not have the characteristics of the first policy.

Negligent conduct can constitute an unfair or deceptive act. *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 13 (Tenn. Ct. App. 1992). Failure to advise an insured that her actions may impair her rights under her policy can be an unfair practice. *Gaston v. Tenn. Farmers Mut. Ins. Co.*, No. E2006-01103-COA-R3-CV, 2007 WL 1775967, *11 (Tenn. Ct. App. June 21, 2007). It can also be deceptive. *Id.* "The TCPA applies to any act . . . that is unfair or deceptive to consumers." *Tucker*, 180 S.W.3d at 115. We find no error in the trial court's ruling that the defendants' conduct violated the TCPA.

Since the acts found to justify a negligence award also constituted a violation of the TCPA, the trial court doubled the $300,000.00 negligence award pursuant to its authority under Tenn. Code Ann. § 47-18-109(a)(3):

> If the court finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of this part, the court may award three (3) times the actual damages sustained and may provide such other relief as it considers necessary and proper.

An award of more than actual damages under Tenn. Code Ann. § 47-18-109(a)(3) is discretionary with the trial court. *Keith v. Howerton,* No. E2002-00704-COA-R3-CV, 2002 WL 31840683, *3 (Tenn. Ct. App. Dec. 19, 2002). The Court of Appeals has previously upheld awards of double damages based on the "such other relief" language of the statute. *Id.* at 6. Tenn. Code. Ann. § 47-18-109(a)(3) still, however, requires the court to find a "willful or knowing violation."[11] The trial court found that the defendants were "willful and knowingly reckless, and deceptive." While she used somewhat unusual terminology, we have no doubt that the chancellor considered the defendants' actions willful and knowing violations for purposes of Tenn. Code Ann. § 47-18-109(a)(3). We do not disagree with this conclusion. Nor do we find an abuse of discretion in the doubling of the damages.

## VI. Other Issues

In light of our rulings, we deem it unnecessary to address any of the other arguments raised by the appellants.

## Conclusion

We affirm the trial court's judgment against the defendants for breach of contract but reduce the $1,000,000.00 judgment amount by the amount of the plaintiff's settlement with American General, $900,000.00, for a total breach of contract verdict of $100,000.00. We also affirm the trial court's finding of negligence regarding the First Colony policy and affirm the judgment of $300,000.00. We affirm the trial court's finding that the negligence regarding the First Colony policy also violated the TCPA and affirm the trial court's award of an additional $300,000.00 for the TCPA violation. The appellee's request for attorneys' fees on appeal is denied. The case is

---

[11] It may seem odd for a negligent act to be found willful. This court noted many years ago that "wilful [sic] negligence" is a misnomer. *Ridley v. Spence*, 456 S.W.2d 846, 856 (Tenn. Ct. App. 1970). It has been equated with the term "wanton negligence," which "is characterized by a realization on the part of the tortfeasor-or at least what would cause such a realization to a reasonable man-of the probability of injury to another, and by a reckless disregard, nevertheless, of the consequences." *Id*. at 856-57. This court has also approved a trial court's labeling a negligent misrepresentation as a willful violation of the Tennessee Consumer Protection Act and the trial court's award of double damages. *Brandon v. Winnett d/b/a Winnett Home Builders, Inc.*, No. 01A01-9411-CH-00529, 1995 WL 444385 (Tenn. Ct. App. July 28, 1995).

remanded to the trial court for recalculation of pre and post trial interest and attorneys' fees. One half the costs of appeal are assessed against the appellants and one half is assessed against the appellee.

_____
ANDY D. BENNETT, JUDGE